# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* THE SAN FRANCISCO AND ALAMEDA RAILROAD COMPANY.

LEASE TO FERRY COMPANY OF WHARF IN SAN FRANCISCO BY HARBOR COMMISSIONERS—STATUTORY CONSTRUCTION.—The fourth section of the Act of the 4th of March, 1864, (Stats. 1863–4, p. 140,) amending and adding to the Act of April 24th, 1863, in relation to the improvement and protection of the wharves, docks, and water front in the City and County of San Francisco, in effect provides that the State Harbor Commissioners, by lease, shall grant certain of said wharves, to be designated by them as necessary for the purpose, to the owners of ferry boats plying across and upon said bay, free of rent or charge, for a period not exceeding three years; but upon the conditions that the lessees shall keep the same in repair and make certain prescribed improvements, and shall not make any charge, by way of wharfage or otherwise, for the use of the same by any passengers to be carried on said ferries, and that said wharves shall not be used by said ferries for any other purpose than ferriage. It is, however, provided that nothing contained in the Act shall prevent any ferry owners or companies from leasing wharves, slips, or landings from said Commissioners upon the same terms and conditions as other persons or companies. The section also provides for the leasing by said Commissioners of all the wharves and water front of said city that shall come into their possession for a like period, whereby the lessees are, upon the performance of certain specified conditions and the payment of rent, to become vested with the entire beneficial interest in the premises so leased, with the right to collect and receive to their own use such tolls as may be established by the Commissioners. By virtue of and in pursuance of the authority thus conferred, said Commissioners leased to the Alameda Ferry Company, which was substantially the same company as the defendant, a certain wharf, being a portion of said city front, for the period of three years, free of rent or charge; by

which lease it was, however, provided, among other things, that "this lease is granted to the said ferry company for the use of their steamboat Alameda or such other boat as they may use in her place, and the premises hereby leased, and all the rights and privileges hereby granted, are leased and granted and are to be used for ferry purposes only." During the period of said lease the defendant carried large quantities of freight from various points in Alameda County, on the line of its railroad, to San Francisco, by its railroad and the ferryboat of the Alameda Ferry Company, and delivered the same over said wharf to the consignees thereof, which had been done under contract with the owners of said freight, without making a special charge for dockage or wharfage. In an action by said Commissioners, in the name of the People, to recover tolls from the defendant for said freights at the usual and customary rates established by them : *Held*, first, that said lease having been given in strict conformity with said statute, its interpretation depends upon the proper construction of said fourth section ; second, that the sole object of said statute, so far as it relates to ferry companies, is to grant to them the use of the wharf, free of charge, only so far as they may require its use as a landing for their boats, and that any other or greater privilege could only be secured to them by their leasing the entire estate in such wharves, as provided in the statute, in relation to "other persons and companies," and that, upon the facts stated, the plaintiffs were entitled to recover.

IDEM—"FERRIAGE."—The business of "ferriage," as contemplated by the statute, embraces only the transportation across the Bay of San Francisco, for hire, of whatever travels or is driven over the highways of the country, as animals, teams with their wagons and loads, carriages, horsemen, and pedestrians with their baggage and parcels carried in their hands. It begins and ends with the wharf over which the right of free passage, for such persons and things only, is intended to be secured by the statute.

IDEM—There is nothing in said statute which either expressly or by implication exempts any portion of the commerce of the Port of San Francisco from the burden of such wharf and dockage charges, from which it was designed to raise a sufficient fund to build and keep in repair the sea walls, etc., therein provided to be built. Such charges are to be considered as a tax, and as such must be uniform ; and, under the Constitution, the Legislature had no power to tax a part and exempt a part of such commerce. (*Per* SANDERSON, J., RHODES, J., *concurring.*)

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The plaintiffs had judgment in the Court below, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*Wilson & Crittenden,* for Appellant.

This action is for tolls or wharfage on merchandise landed and delivered by the defendant on the wharf described in the

complaint.   It appears by the agreed statement of facts that the defendant, during the time of the delivery of the merchandise in question, was occupying the wharf and using it under a lease which was executed by the State Harbor Commissioners, under section four of an Act of the Legislature entitled "An Act amendatory of and supplementary to an Act entitled an Act to provide for the improvement and protection of wharves, docks, and water front of the City and County of San Francisco," etc.   (Stats. 1863–4, p. 140.)

This action is not based on the lease, but the Harbor Commissioners claim a right to recover of and from the defendant the same duties on merchandise for its use of the wharf in landing and delivering merchandise from the ferryboat as if no such lease existed.   The Court below gave judgment for the plaintiffs, from which judgment the defendant appeals, and the question presented is one involving the rightful construction of the statute referred to.

It appears from the agreed statement of facts that the defendant has never charged any tolls or wharfage on freights landed at its wharf, nor, in fact, could it collect any of these duties.   (Sec. 11 of the amendatory Act, Stats. 1863–4, p. 145.)   It is not pretended that the Commissioners ever gave any such power, and the lease, which alone creates any relation between the plaintiffs and defendant, makes no mention of such authority.   The company clearly cannot be held for the tolls or wharfage on other people's merchandise, and it is conceded that the merchandise referred to did not belong to the defendant.

The company cannot be charged for its own use of the wharf in landing and delivering merchandise, because the use of the wharf is given the defendant free of rent both by the lease and the statute.   (Sec. 4.)

Upon what principle, then, can the owners of a ferry be held for wharfage upon the merchandise of *other persons*, which they land and deliver over a wharf of which they have an exclusive right of possession and use, under a lease

rightfully executed to them by the State Harbor Commissioners?

The whole object and intention of the Legislature, in the statute referred to, is manifestly that the wharves should be leased separately to different persons, and that "the other portions of the water front" should be leased in sections, so as to secure the construction and repair of the wharves and other improvements, and the dredging of the docks or slips. The leases must contain proper provisions on the part of the lessees for the dredging, repairs, etc. The lessees, after paying the rent specified in the lease, and performing the other onerous conditions of dredging, etc., become entitled to the full use and enjoyment of the wharf or other portion of the city front leased, and may to their own use collect the wharfage and other tolls or duties.

The Harbor Commissioners have no power to carry on business as wharfingers, or to collect any tolls, wharfage, or dockage, except in such portions of the city front as are not leased. (Stats. 1863-4, p. 141, Sec. 5.) It is only in cases of inability to lease that the Commissioners can fix the rate of tolls, wharfage, and dockage, (Id., Sec. 9,) and these are only fixed on the unrented portions of the front, while as to the leased portions the lessees may determine their own rate of tolls. Then, as the Commissioners can only fix the rates of duties in such parts of the front as are not leased, so they can only collect where they have the right to fix the rates. (Stats. 1863-4, p. 140, Sec. 3, Sub. 6.)

The principal difference between leases to ferry owners and others consists in the provision that the former shall be "free of rent or charge of any kind whatsoever." The Act is also restrictive on the ferry lessees in this, that they shall not use the demised premises for any other purpose than ferriage, and that they "shall not make any charge, by way of wharfage or otherwise, for the use of said wharves, docks, or landings *by passengers* traveling or carried upon said ferries." With the exceptions stated, ferry lessees, like all

others, are vested with full power for all purposes over the property leased to them.

Now, a ferry is used for carrying property as well as passengers. (1 Bouv. Law Dic. 563.) Ferrymen are compelled by law to carry property as well as persons. (1 Hitt. Dig., Art. 3,083.) Ferrymen are common carriers of goods as well as passengers, and liable as such. (1 Bouv. Law Dic. 563; Ang. on Com. Carriers, Secs. 82, 109, 165, 290, 588.)

The use of the wharf by the ferry owners in receiving and delivering goods and chattels is one of the "purposes" of ferriage, and the use of the wharf by the owners of the ferry boats is to be "free of rent or charge of any kind."

The defendant is not liable as charged, because, first, it never collected the duties sought to be recovered; second, it had no power to collect for the plaintiffs, and therefore neglected no duty; third, for the defendant's own use of the wharf, it is to pay no rent or charge of any kind whatsoever; fourth, if the use of the wharf by others rendered those others liable to duties, no liability of the defendant thereby arises; and fifth, the lease determines the right and liabilities of the parties.

The plaintiffs have no right to recover, because, first, they can only "collect the revenue which may arise from such wharf or other work" when they are unable to lease it; second, they have given a lease; third, their right to collect duties is limited to such duties as they have a right to fix; and fourth, they can only fix the rates of duties on the parts of the front retained in their possession and control.

*Edward Tompkins,* for Respondents.

This was an amicable suit brought to settle the question whether freight brought to San Francisco by the Alameda Railroad Company was exempt from paying tolls to the Harbor Commissioners by reason of its being landed upon the city wharf from a ferry boat. The facts were agreed upon, and it is stipulated that "if the Court shall be of opinion that the

plaintiffs are entitled to tolls upon such freight, judgment to be rendered herein in favor of plaintiff, the amount to be thereafter ascertained. If of the opinion that they are not so entitled, judgment is to be rendered for the defendants." If the decision in this Court should turn upon any other question, the object of the case would be entirely defeated.

Unquestionably, by the statute, the control of the wharf in question, with the right to collect wharfage and tolls thereon, was vested in the State Harbor Commissioners. (Act of March 5th, 1864, Secs. 2, 3, 4, 5, 8, 9, 20; Stats. 1863–4, p. 138, et seq.) The liability of any one using that portion of the water front to pay wharfage and tolls, was precisely co-extensive with the right of the Commissioners to collect. Unless they have parted with that right, they retain it yet. The law and the lease fixed the rights of the Commissioners and of the ferry company, and as between them it does not seem difficult to ascertain what they are; but here a new party (the defendant) is introduced. The Alameda Railroad Company—a corporation owning and running a railroad in Alameda County—contracts with the owners of freight along the line of its road, to transport their freight to San Francisco, and land it upon and deliver it over the wharf in question to the consignees, pursuant to said contracts. The Harbor Commissioners demand wharfage and tolls therefor, at the prescribed rate; and their right thereto being denied, this action was brought against the railroad company, which sets up the lease to the ferry company as a defense. But if it were conceded that the defendant possessed all the rights originally granted by the lease to the Alameda Ferry Company, yet no right to collect tolls or wharfage was given, nor have the ferry company, as such, any reason for following the freight or passengers one step upon the wharf. They and their boat are exempt from all charges for its use. But, as a "ferry company," their business is limited to "ferrying over," and their rights are all "for ferry purposes only." Not one foot of the wharf is leased to them. The Harbor Commissioners have parted with no portion of their

right to collect tolls and wharfage thereon, if anything comes there that is subject to such charge.

If, then, the defendant, as a ferry company, enter into the forwarding business, and enter into contracts to deliver freight in the City of San Francisco, draw the same to their ferry, ferry it over, and pile it upon or deliver it over the wharf in the city, are they thereby to evade the payment of tolls thereon to which all other forwarders are subjected, because they use the ferryboat in getting their freight across the bay? We submit, that to state the question is to answer it. It was not the intention of the Legislature to give them a monopoly of the freighting business, or to help them to destroy all others engaged therein.

If, then, the ferry company were claiming this exemption, they would not be entitled to it for the following reasons: It has not been granted to them, and the business is not within the scope and meaning of "ferriage only," or within the legitimate business of a ferry company; it was not understood by the Commissioners, or taken into account in fixing the terms and conditions of the lease; it would give an unequal and unjust advantage over others in the same business—and the law that could authorize it would not be "general in its operation," but would be unconstitutional and void. But if the answer would be thus conclusive as against the ferry company, how much more so does it become when the privilege is claimed by the defendant, a transportation company? If one ferry company has it in its power to exempt all its customers from tolls or freight landed on the dock, all other ferries will have the same right.

Moreover, the business of "forwarding" and of "ferriage" are entirely distinct. Forwarders may, and frequently do, make use of ferries and toll bridges, but it is no part of the business of ferry or bridge companies to become forwarders.

The ferry incurs no risk, and takes no responsibility beyond that of safely "ferrying over" whatever may be brought to it; and the words in the statute limiting the use of the privileges granted to "ferriage" only, particularly when

coupled with the other provision that allows ferry companies to lease wharves the same as others, if they desire to, prove conclusively that it was the intent of the law to say to the owner of the ferryboat: "If you are satisfied with a slip for your boat, you may have it free of charge; but if you wish to control the tolls upon freight that you bring over, you must lease a wharf as others do, and then you can remit the tolls if you please." Any other construction involves the absurdity that the Legislature intended to give the owners of the ferryboats half the income of the water front, and to allow them to monopolize the whole forwarding business of the State to and from San Francisco.

By the Court, Sanderson, J. :

This action was submitted in the Court below, and has been brought here upon an agreed statement of facts, from which it appears that the State Harbor Commissioners, acting under the authority conferred upon them by the fourth section of the Act of the 4th of March, 1864, (Stats. 1863–4, p. 140,) amending and adding to the Act of April 24, 1863, in relation to the improvement and protection of the wharves, docks, and water front in the City and County of San Francisco, on the 12th of February, 1866, leased to the Alameda Ferry Company "all that certain portion of the water front of the City of San Francisco commencing at a point in the easterly line of Davis street, ninety feet north of the north line of Pacific street, and extending northerly along said east line of Davis street one hundred and fifteen feet, for the term of three years," upon certain terms and conditions specified in the lease, which were, in effect, that the ferry company should make and maintain certain improvements, but be required to pay no rent. The lease contains a clause to the effect following: "This lease is granted to the said ferry company for the use of their steam ferryboat Alameda or such other boat as they may use in her place, and the premises hereby leased, and all the rights and privileges hereby

granted, are leased and granted and are to be used for ferry purposes only." That this lease was obtained by the Alameda Ferry Company for the benefit of the defendant, which is a railroad corporation, owning and operating a railroad, which has its terminus upon the Bay of San Francisco, between which terminus and the City of San Francisco the ferry company runs its boat. That the defendant has been carrying, since the date of said lease, large quantities of freight from various points on the line of its railroad to San Francisco by its railroad and the ferryboat of the Alameda Ferry Company, delivering the same over said wharf to the consignees thereof. That said defendant has transported said freights under contracts with the owners thereof, without making any special charge for dockage or wharfage.

In view of these facts, it is claimed, on the part of the Harbor Commissioners, that the defendant is liable to pay them, upon the freights in question, the usual and customary tolls, viz: twenty cents per ton in coin. On the other hand, it is claimed by the defendant that it and the ferry company are substantially one and the same thing, and that it had, therefore, the right to land and deliver the freights in question at and over the wharf in question free of tolls by virtue of the lease in question.

Some considerable stress seems to be placed by counsel for the defendant upon the fact that in obtaining the lease the ferry company acted in the interest and for the benefit of the defendant. What connection, if any, there may have been between the defendant and the ferry company is not shown by the agreed facts, and were it a matter of any moment we should be bound to consider them, as their names import, as separate bodies. It is, however, stated in the answer that the Alameda Ferry Company is composed of divers persons, who are also stockholders of the defendant, and that the lease was procured by them solely for the benefit of the defendant; and as we conceive that the result can in no way be affected by such a connection between the ferry company and the defendant, we shall assume the statement

to be correct, and decide the case on that theory, for it may
be conceded that the two are one without in the least affect-
ing the result; since, as the case shows, the one has a double.
capacity, and, as we shall presently see, although it may
escape the payment of toll in the one capacity, it cannot, as
we consider, do so in the other.

It is not pretended that the lease departs at all from the
terms of the statute under which it was made, and the ques-
tion to be decided turns, therefore, upon the construction of
the fourth section of the statute, to which we have already
referred.    It is provided that the Harbor Commissioners
shall designate such wharves or other portions of the water
front lying between Vallejo and Third streets, as may be
deemed necessary for the use of ferryboats plying across the
Bay of San Francisco, and thereupon "by lease, grant the
use of the same to the owner or owners of said ferryboats
for a period not exceeding three years, free of rent or charge
of any kind whatsoever, but upon the condition that the
lessees thereof shall dredge the docks or slips used by them,
repair the wharves, and construct all works necessary for the
protection of said wharves, docks, or landings, pursuant to
the regulations prescribed by the Commissioners; and con-
ditioned further, that said lessees shall not make any charge,
by way of wharfage or otherwise, for the use of said wharves,
docks, or landings, by any passengers traveling or carried
upon said ferries, and that said wharves, docks, and landings
shall not be used by said ferries for any other purpose than
ferriage; provided, that nothing herein contained shall pre-
vent any ferry owners or companies from leasing wharves or
slips or landings from said Commissioners upon the same
terms and conditions as other persons or companies."    The
same section makes provision for leasing all the wharves and
water front which shall come into the possession of the
Commissioners, whereby the lessees are, upon the perform-
ance of certain conditions and the payment of rent, to
become vested with the entire beneficial interest in the
wharves and water front so leased to them, for terms not

exceeding three years, with the right to collect and receive to their own use such tolls as may be established by the Commissioners.

By the ninth section it is provided that the Commissioners, from time to time, shall fix the rates of tolls, wharfage, and dockage, which shall not exceed a certain amount per ton on merchandise landed on or shipped from the wharves, and a certain less amount on each load of less than a ton carried on or off the wharves by any vehicle; and that, in fixing said tolls, they shall be governed by the amount of money necessary to be raised thereby for the purpose of improving and keeping in repair the city front. They are forbidden to collect tolls of pedestrians, or upon the baggage or packages which they carry. These tolls are expressly made "a lien upon any goods, wares, or merchandise landed upon any of the wharves, piers, or landings in the City and County of San Francisco; and the Commissioners created under this Act, their agents or lessees, are hereby authorized to hold possession of goods, wares, or merchandise landed as aforesaid, as security for the payment of wharfage."

From these provisions it is very clear that it was the intention of the Legislature to make the improvement and repair of the sea walls, embankments, wharves, piers, landing places, thoroughfares, and the water front generally, a charge upon the commerce of San Francisco. There is nothing found in the statute which, either expressly or by implication, exempts any portion of the commerce of that port from this burden, nor, as we consider, could the Legislature, under the Constitution, have exempted any portion, had it so desired. It has no power to tax a part, and exempt a part. It must tax all or none. (Const., Art. I, Sec. 11; *French* v. *Teschemacher*, 24 Cal. 544.) It cannot discriminate between persons, or grant an indulgence to one which it does not grant to another standing in the same relation. In determining, therefore, what rights the defendant acquired under its lease, (treating it as the lessee, as we have already suggested we would do,) the foregoing considerations must not be overlooked, for in

the interpretation of a statute, all its provisions, as well as its general policy, must be consulted, and it can never be presumed that the Legislature intended to pass an unconstitutional Act.

Counsel for the defendant argue that the lease vested in the defendant the entire estate in the premises described in the lease, for the term there specified. But we do not so understand the statute or the lease. We understand that the sole object of the statute, so far as it relates to ferry companies, is to grant to them the use of the wharf or landing place only so far as they may require its use as a landing for their boats. This is apparent from the fact that they are limited to the use of the wharf for the purpose of "ferriage" only, and are precluded from making any charge by way of wharfage, or otherwise, which is a denial of all beneficial use not included in use as a landing place merely for their boats. By its lease, therefore, the defendant acquired the right to use the wharf as a landing place for its boat, free of charge, but nothing more. If it desired greater privileges, it could have obtained them by leasing the entire estate, as provided by the statute in relation to "other persons or companies." It acquired the right to transport "persons and things for hire" to and from the wharf without paying anything for the privilege—the right to come alongside the wharf for the purpose of taking and leaving "persons and things" seeking transportation across the bay, without charge, which right in no way vested the defendant with power to grant free passes to "persons and things" over the wharf, nor trenched upon the right of the Harbor Commissioners to levy a toll upon the "persons and things" so taken and left. The right of the Commissioners in that respect was unaffected by the lease; their power was the same as before the lease was executed. They could levy no toll upon the passengers, or their baggage, or the packages which they carried in their hands, but otherwise in respect to goods, wares, and merchandise. The business of "ferriage"—to borrow the lan-

78

guage of the statute—which is the transportation of "persons and things" across the bay for hire, (1 Bouvier Law Dic.) begins and ends at the wharf—that business the defendant is allowed to carry on free of charge. But if, in addition thereto, it undertakes the transportation of freight from various points on the line of its railroad to San Francisco, and the delivery thereof over the wharf to the parties to whom it may have been consigned, it is not in respect to such business a ferryman, and has, therefore, no special privileges, but stands upon the same level upon which all other transportation companies stand, and must pay the same tolls. As to such transportation business the defendant must be considered as acting in its capacity of a railroad company, and must be held to the same rule in respect to tolls as if its road terminated at the wharf, instead of the opposite side of the bay, or it employed some other vessel than a ferryboat for the purpose of crossing the bay with its passengers and freight. To railroad corporations, as such, no lease is authorized by the statute.

The policy of the Legislature, in thus granting to ferry companies the use of wharves free of charge, is apparent. It proposed to levy no tax upon individuals coming and going across the bay, or upon their baggage or the packages which they may carry in their hands, but on the contrary to afford every facility to the traveling public. To charge the ferryboats for the use of the wharves would have been an indirect charge upon the traveling public, and would have defeated this policy as effectually as a direct charge would have done; hence the free use of the wharves to the ferry boats, which was the only practicable mode of securing their free use to the traveling public. To go further than this the Legislature could have had no motive which would not have been not only in direct conflict with the whole tenor and scope of the statute, but would have tended in a great degree, if not entirely, to defeat its sole purpose and object, by throwing the carrying trade of the bay into the hands of ferry companies, and thus, at the same time and by the same

breath, exempt from taxation the very thing which it proposed to tax. The Legislature could not have thus intended to create a fund for the improvement and maintenance of the city front, and destroy it by the same act; and hence the "ferriage," of which the statute speaks, and which is exempted from tolls, must be held to mean the transportation of whatever travels or is driven or led over the highways of the country, as, for example, animals, teams with their wagons and loads, carriages, horsemen, and pedestrians with their baggage and parcels, even if the term, as claimed by counsel for defendant, can be considered as having, in the abstract, a larger meaning, which we do not, however, consider to be the case.

A ferry, in its ordinary sense, is but a substitute for a bridge where a bridge is impracticable, and its end and use is the same. Like a toll bridge, it is a franchise created for the use and convenience of the traveling public, as a link in the highway system of the country, and by no means includes the transportation of goods, wares, and merchandise by themselves, or, in other words, the carrying trade .of modern commerce. Ferriage, literally speaking, is the price or fare fixed by law for the transportation of the traveling public, with such goods and chattels as they may have with them, across a river, bay, or lake; and by its use we understand the Legislature to have restricted the free use of the wharves by the ferry companies to the accommodation of the wants of the traveling public, in the ordinary sense of those terms.

It admits of serious doubt whether ferry companies, operating under leases of this character, can engage in the carrying trade, as distinguished from the transportation of the traveling public, without a forfeiture of their lease. If allowed to do so, we are unable to perceive why they do not so far have an illegal advantage over other persons engaged in the same business, and who are charged wharfage; but that question is not presented, and we therefore express no opinion.

Judgment affirmed.

SAWYER, C. J., concurring specially:

I concur, but without expressing any opinion upon the constitutional question referred to in the opinion of my associate.

Mr. Justice CROCKETT delivered the following concurring opinion, in which Mr. Justice SPRAGUE concurred;

I concur in affirming the judgment in this case, on the ground that neither the statute nor the lease contemplates that the ferry company is to be exempted from tolls, except in respect to such matters as properly pertain to the business of "ferriage," in the ordinary acceptation of that term. In my opinion, no tolls can be charged for the crossing or occupation of the wharf for any purpose legitimately connected with the business of "ferriage," in the ordinary sense of that term. Persons, teams, wagons with their contents, and animals being driven or led, may cross the wharf free of toll, and may occupy it for a reasonable time whilst awaiting transportation. But, under the lease, the ferry company has no right to convert itself into a forwarding company for the transportation of freights as contradistinguished from "ferriage" in its ordinary signification, and thus escape the payment of tolls, to which all other persons engaged in the freighting business are liable. So far as its business of ferriage proper is concerned, neither the company nor its patrons are subject to tolls; but if it engrafts on the business of ferriage the business of forwarding freights as such, it is liable for tolls in the same manner that other freighters are liable.

I express no opinion on the constitutional question discussed in the prevailing opinion.