Town of Wilton *v.* Town of Weston.

———•••———

## THE TOWN OF WILTON *vs.* THE TOWN OF WESTON.

The act of 1878 (Session Laws of 1878, p. 325, sec. 7,) provides that damage done by dogs to sheep in any town, proved to the satisfaction of the selectmen, shall be paid by such town, and that it may recover such damages, when paid, from the owner of the dog, if a resident of the town; but if not such resident, that then the selectmen may institute a suit against the town where he resides, unless he or such town shall on notice pay to the treasurer of the former town

the amount of such damage; and that any town which shall be obliged to pay any such damage may recover the same from the owner of the dog. Held—

1. That the statute was not void on the ground that it did not provide for an adjudication upon the fact and amount of the damage, as it is fairly implied that, if the matter is not settled without suit, the fact of the injury and the amount of the damages are to be determined in the suits for which the statute provides.

2. That in such suit the damages to be recovered are the actual damage.

3. That if the selectmen of a town pay more than the actual damage, the right of the town to recover must still be restricted to the actual damage.

4. That the act was not invalid because it required the town to assume the burden of paying the damages in the first instance and of then bringing suit to recover the amount of the owner of the dog.

5. That where the selectmen gave to a person whose sheep had been injured by dogs an order on the town treasurer, which was given and received in satisfaction of the claim, it constituted a "payment" within the meaning of the statute.

The provision for the liability of towns in such cases is one of police regulation which can not well be made effectual except through the agency of the towns. They receive the license fees which the owners of dogs are required to pay, and have besides a remedy over for what damages they pay. They have also, and throughout our legislation have had, power that could be used to prevent or diminish the nuisance.

Courts should uphold the validity of statutes where it can be done by any reasonable interpretation, even though it be not the most obvious one.

ACTION upon the statute of 1878, relating to dogs; brought originally before a justice of the peace, and, by appeal of the defendants, to the Court of Common Pleas of Fairfield County, and tried to the court before *Hall, J.* The seventh section of the statute is as follows:—

"Damage done by dogs to sheep or lambs, or cattle, proved to the satisfaction of the selectmen to have been committed in their town, shall be paid by such town, and it may recover such damages when paid from the owner or keeper of such dog or dogs, if residents of such town; but if the owner or owners shall not be residents of the town in which the damage was done, then said selectmen may institute a suit against the town or towns where such owner or owners reside, unless such owner or owners or such town or towns shall, on notice, pay to the treasurer of the town where such damage was done the amount of such damage; and any town which shall be obliged to pay any damage as aforesaid may recover the amount thereof from the owner or owners of the dog or dogs doing such damage."

The declaration alleged that on the 9th day of December, 1878, within the limits of said town of Weston, two dogs, then owned and kept by residents of said town of Wilton, attacked and killed six sheep, then the property of David D. Coley, of the value of thirty-five dollars, and that it was afterwards proved to the satisfaction of the selectmen of said town of Weston that said damage was done by dogs the owners and keepers of which were residents of said town of Wilton aforesaid; and that said damages were, on the 21st day of January, 1879, paid by said town of Weston to the said Coley, and that notice of all the facts aforesaid was afterwards given to said town of Wilton, and to the keepers and owners of said dogs, and payment was demanded of said town and of said keepers and owners respectively, of the damages so done as aforesaid; and that said town of Wilton and the owners and keepers of said dogs refused and still neglect and refuse to pay the same. Wherefore, by force of the statute in such case made and provided, said town of Wilton has become and is liable to pay to said town of Weston the amount of said damage; and a right of action has accrued to said town of Weston to recover of said town of Wilton the sums so paid for said damage, which damages have never been paid by said town of Wilton though demand has been made for the same, all of which is to the damage of said town of Weston the sum of one hundred dollars.

The defendants demurred to the declaration, claiming under the demurrer —(1.) That the statute upon which the action was founded is incomplete, imperfect and fatally defective because it does not provide that any judgment shall be rendered, nor what shall be the measure of damages in suits which selectmen may institute under it.—(2.) That the statute is opposed to natural right and justice, and therefore invalid, in so far as it makes a town responsible for damages done by dogs owned by its inhabitants, because it imposes upon a town a liability which it can in no way avoid, making it a surety for the payment of damages resulting from trespasses by others, which it can neither prevent nor punish.— (3.) That the statute is unconstitutional and void in that it, in effect, takes private property without compensation.

But the court overruled the demurrer. The defendants thereupon pleaded the general issue, and upon the hearing the court found the following facts:—

On the 9th of December, 1878, David D. Coley, of Weston, was the owner of a flock of sheep, which was on that day attacked and damaged by dogs. The damage was done in the town of Weston, amounted to $35, and was done by dogs the owners of which resided in the town of Wilton. Coley demanded payment by the town of Weston of the damage. It was proved to the satisfaction of the selectmen of Weston that the damage amounted to the sum of $35, and that it was done in Weston by dogs the owners of which lived in Wilton.

Subsequently an action was brought by Coley against the town of Weston to recover for the damage, and also to recover for damage claimed by him to have been done to his sheep by dogs on the 4th of November, 1878; which action, before trial, was settled by the parties on the 21st of January, 1879, the selectmen of Weston agreeing to pay in settlement thereof to Coley $69.12. In settlement of this action the selectmen gave Coley an order on the treasurer of the town for that sum, payable to his order, and drawn in the usual manner. The order was given by them and accepted by Coley in full satisfaction of the claims for which his suit had been brought; and upon the receipt of the order Coley made and delivered to the selectmen two receipts, one for $34.12 "in full of all demands for damage done to sheep by dogs on or about Nov. 4th, 1878," and the other for $35, "in full for damage done to sheep by dogs in said town on the 9th day of December, 1878." The damages were never otherwise paid than by the giving of the order. Whether the order was ever presented to the treasurer did not appear.

The damage done November 4th, 1878, was done by two dogs, one of which was owned by Charles E. Mann, of Wilton, and the other by Frederick Myers, of Wilton. Soon after the order and receipts were given, the selectmen of Weston presented to the selectmen of Wilton a claim of $35 for the damage done December 9th, 1878, and demanded payment, but the selectmen of Wilton refused to pay the amount.

The selectmen of Weston on the same day made demand upon Myers and Mann of payment of said damage and also of payment for the damage done to the sheep of Coley November 4th, 1878, but both Myers and Mann refused to pay for the damage, or any part of it, and denied that it was done by dogs owned by them.

Upon the foregoing facts the defendants claimed and asked the court to hold—(1.) That the giving by the selectmen of Weston of an order on its treasurer for the amount of Coley's damage, did not constitute a payment of such damage—(2.) That the court could not render judgment for the plaintiff, because the statute was incomplete and fatally defective in not providing that any or what judgment should be rendered. —(3.) That it was invalid because it made a town, and consequently every inhabitant of the town, responsible for damage done by dogs where owners reside within the town.

But the court overruled these claims and rendered judgment in favor of the plaintiffs for the sum of $35 damages. The defendants brought the record before this court by a motion in error.

*H. H. Barbour*, for the plaintiffs in error.

1.   The finding does not show a payment by Weston to Coley. The court finds that there was no payment unless the giving of a town order by the selectmen to Coley, and its acceptance by him, constituted one. The design of the statute undoubtedly is to replace in the treasury of the plaintiff town the amount of money which has been taken from it. But in this case no money has been taken, for, as far as it appears, the order has not even been presented. By statute (Gen. Statutes, p. 25, sec. 1,) selectmen can only draw orders on the treasurer for payment of claims against the town. It is the treasurer, and he only, who *pays* the claims. The giving of the order was therefore in no sense a payment. The substitution of one simple contract for another is not a payment. The same debt continues in a different form. *Frink* v. *Branch*, 16 Conn., 275. One's own promissory note given in payment of an antecedent simple contract debt, and

expressly accepted as payment in full, does not prevent the creditor from suing on the original debt if the note is not paid. *Cole* v. *Sackett*, 1 Hill, 516. The mere giving of a town order is not payment, and does not prevent a resort to the original cause of action. *Davidson* v. *Bridgeport*, 8 Conn., 476.

2. The statute is incomplete and fatally defective.—(1.) There is no direction that any judgment shall be rendered in such a suit as this. While it provides that a town may "recover" from the owners of dogs doing damage, it merely gives the right to "institute a suit against the town or towns where such owner resides."—(2.) But if the right to institute a suit carries with it the right to a judgment, the omission to fix the measure of damages is a fatal defect. What shall the judgment be? For the amount which the town has paid to the owner of the damaged sheep, or the actual damage? The statute authorizes one selectman of a town to settle with a neighbor, or with himself, for damages done to his sheep by dogs owned by the resident of another town, and then in the name of his town to recover from that other town the amount paid in settlement, no matter how extravagant and unreasonable it may be; and the town sued is cut off from the right of having a very material part of the action judicially determined. By this statute the legislature has trenched upon the functions of legal tribunals, for it seeks to take away from them the power of determining the amount of a private controversy and to compel the adoption of an amount fixed by the judgment or caprice of a single individual.

3. The statute is invalid in so far as it makes a town, and, consequently, every inhabitant, responsible for damage done by dogs whose owners reside within the town. This is opposed to natural right and justice. *Welch* v. *Wadsworth*, 30 Conn., 149. It can be sustained only upon the theory that the legislature has the right to say that the property of a town, and of *A* an inhabitant thereof, shall be taken to pay *B;* the power to impose by statute upon a corporation a claim which it was never concerned in creating, against which it

protests, and which is unconnected with the ordinary functions and purposes of municipal government. But the courts have repeatedly declared that if the state should order a city or town to apply its funds or raise money by taxation to establish one of its citizens in business, or for any other object, no matter how worthy, equally removed from the proper sphere of government, the usurpation of authority would not only be plain and palpable, but the duty of the courts to declare the order void would be imperative. Cooley's Const. Lim., 491, note, 495, 531; *People* v. *Mayor &c. of Chicago*, 51 Ill., 18; *Curtis's Admr.* v. *Whipple*, 24 Wis., 350; *State ex rel. McCurdy* v. *Tappan*, 29 id., 687; *Morford* v. *Unger*, 8 Iowa, 92; *Taylor* v. *Porter*, 4 Hill, 140; *Bloodgood* v. *Mohawk & Hudson R. R. Co.*, 18 Wend., 55; *Hampshire* v. *Franklin*, 16 Mass., 86; *Lowell* v. *Boston*, 111 id., 460, 470; *Allen* v. *Inhabitants of Jay*, 60 Maine, 128; *Wells* v. *City of Weston*, 22 Misso., 387; *Kelly* v. *Marshall*, 69 Penn. St., 319; *Woodruff* v. *Neal*, 28 Conn., 169. The only cases in which the legislature can interfere with private property are thus concisely stated in the case of *Hanson* v. *Vernon*, 27 Iowa, 28:—"1. It may authorize it to be forfeited for crime or sold for the owner's debts judicially established, or in pursuance of judicial proceedings.—2. It may take it for public use under the power of eminent domain, on condition of just compensation being made in money. For any private use the legislature cannot touch the property of the citizen, even if it does make compensation.—3. It may, under peculiar circumstances, condemn it under the police power, when the property, or its use or situation, is such as to endanger the public health, welfare or safety.—4. It may be taken by virtue of the taxing power." How shall we class the taking of the property of a town and its inhabitants to pay for damages to sheep? It is not a forfeiture for crime or a levy for debt. It is not the exercise of the right of eminent domain, for that appropriates property to some specific use on making compensation. It is not a police regulation, for that could not go beyond preventing an improper use of property with reference to the due exercise

of rights and enjoyment of legal privileges by others. It is not taxation, for that is simply an apportionment of the burden of supporting the government. What is it, then, but simply and absolutely a law to forfeit one man's property to another? But it may be said that dogs are taxed, and that the town pays damages with the revenue derived therefrom. But the damages may be out of all proportion to the amount derived from taxation. Moreover, horses and cattle are taxed, but no one would dream of making a town liable for their trespasses. Liquor dealers are taxed; the town derives a large revenue from licensing them; but the strongest opponent of that traffic would hardly suggest that the town be compelled to pay the damage which is caused by their customers.

*L. Warner*, for defendants in error.

LOOMIS, J. The statute upon which this action is founded reads as follows:—[given in full on page 326.]

It is distinctly found that sheep owned by one Coley of the town of Weston, while in that town were attacked and damaged by dogs owned by Mann and Myers, residents of the town of Wilton, to the amount of thirty-five dollars, and although duly notified neither Mann and Myers nor the town of Wilton have paid the amount or any part of it to the treasurer of the town of Weston; and that prior to this suit the selectmen of Weston drew an order in due form upon the treasurer of that town, payable to Coley or his order, for the amount of the damage, which was given by the selectmen and accepted by Coley in full for his damage.

The counsel for the defendant town concedes that these facts bring the case within the terms and meaning of the statute, provided the giving of the order by the selectmen of Weston on its treasurer for the amount of Coley's damage constituted a payment of such damage. The defendant would distinguish between the order on the treasurer to pay and the actual payment.

We do not think the statute contemplates any such refinement.

By statute, (Gen. Statutes, p. 25, sec. 1,) it is made the duty of the selectmen of a town to settle all claims against it by drawing orders on the treasurer. When a claim is thus settled by the giving and acceptance of an order for the purpose, it may well be regarded as paid within the meaning of the statute in question. And besides, although the finding does not in terms say that the order was actually given and received as payment by the parties, yet in saying that it was given by the selectmen and accepted by Coley in full satisfaction, and that a receipt in full was given, we regard it as equivalent in meaning to payment.

As every element of a good claim is found to have been proved according to the provisions of the statute, judgment for the plaintiff must follow, provided there is any validity in the statute. And this brings us to the main question in the case.

The claim made in the court below and upon which the motion in error is predicated, was, "that the court could not render judgment for the plaintiff, because the statute upon which the action is based is incomplete and fatally defective, in that it does not provide that any or what judgment shall be rendered; and because it is invalid in so far as it makes a town, and consequently every inhabitant thereof, responsible for damages done by dogs where the owners reside within the town." We will consider these two objections to the statute in their order.

1. Does the statute fail to provide that any or what judgment shall be rendered?

We think not. Although it is conceded that the act was not drawn with care, and the language employed to express the intention of the legislature is not well chosen, yet the meaning can be ascertained from the words used. It is said that the statute merely authorizes the selectmen, in a case like this, "to institute a suit" as a mere amusement or threat, but with no right to recover anything, and no rule of damages. This may do by way of extravagant criticism, but it is no fair rendering of the meaning of the statute. It is true that the object of the suit is not stated in express lan-

guage, but, taking all the provisions in view and considering the subject matter and object of the statute, the meaning cannot be mistaken.

The first phrase in the section is *"damage* done by dogs." This is the subject matter for which remedies are provided, which are then specified. If the town pays for this damage then it may first be recovered of the owner or keeper of the dogs, if residents of such town; but, if not residents, then the selectmen may institute a suit against the town where the owner of the dogs resides. But what for? Obviously to recover the same damage that the town would have recovered of the owner if resident in their own town. But the implication is greatly strengthened by the statement of the condition which will prevent or defeat such suit, namely:—"unless such owner or owners or such town or towns shall on notice pay to the treasurer of the town where such damage was done, the amount of such damage." As paying "such damage" defeats the suit, the necessary implication is that "such damage" was the object of it or thing to be recovered.

And the same meaning also further appears from the last clause, which gives a remedy over:—"Any town which shall be obliged to pay any *damage* as aforesaid may recover the *amount* thereof from the owner or owners of the dog or dogs doing such damage."

In this connection another difficulty is suggested, which, as it has occasioned considerable doubt and hesitation on the part of the court, we will consider, though not directly involved in the claim of the defendant as made in the court below.

Is the damage to be recovered the actual damage proved to have been done, or the amount which the selectmen shall consider to have been done and which they shall have paid. If we must adopt the latter as the true construction, we should conclude the law to be invalid. With no provision for notice to the parties, and no provision to make the selectmen a judicial tribunal, they cannot determine and fix the rights of the parties. The first provision of the act is phrased in such a way as to give color to this claim. But on the other

hand, as we have seen, the subject matter which the statute proceeds to provide remedies for is "damage done by dogs to sheep, lambs, or cattle," which must be held to mean actual damage, found by the court before which the suit is finally instituted, if such suit shall be brought.

So far as the phrase "proved to the satisfaction of the selectmen to have been committed in their town," must be construed as submitting the question in the first instance to the selectmen for the purpose of initiating the remedial proceedings, the law assumes that they will act with sound judgment and in the interest of justice. It assumes that if the damage was committed in their town they will be satisfied of the fact, and that if they make a payment to the owner of the injured animal, it will be of the actual damage. But the action of the selectmen must be held subject to review and revision. *Abbott* v. *L'Hommedieu,* 10 W. Va., 677. If by any error they pay more than the actual damage, the right of the town to recover must be restricted to the actual damage, although it cannot in any event exceed the amount paid.

It is due to the legislature to suggest that the provision we have been considering, and which has occasioned doubt as to the validity of the statute, was probably inserted with a view to facilitate an amicable adjustment, at least as between the owner of the sheep and the several towns that might be called upon to pay for the damage. It was assumed that the selectmen where the damage might be committed, and who were to be-called on in the first instance to pay, would be likely to estimate the amount as low as the truth would warrant before making payment, and that the town where the owners of the dogs doing the damage reside, in most cases would pay upon notice and demand, and would then in turn demand the amount of the owners of the dogs, and so the final liability would be ultimately placed where it properly belongs.

2. But it is further claimed that the statute is invalid in so far as it makes a town, and consequently every inhabitant thereof, responsible for damages done by dogs where the owners reside within the town.

If it be assumed that property in dogs stands on the same ground as that of property in other domestic animals, such, for instance, as the horse, we should be compelled to concede that this objection should prevail and the law should be declared invalid. But such assumption is unwarranted, as all the authorities agree. In *Blair* v. *Forehand*, 100 Mass., 140, Gray, J., says:—" Beasts which have been thoroughly tamed and are used for burden, or husbandry, or for food, such as horses, cattle, and sheep, are as truly property of intrinsic value and entitled to the same protection as any kind of goods. But dogs and cats even in a state of domestication never wholly lose their wild natures and destructive instincts, and are kept for uses which depend on retaining and calling into action these very natures and instincts, or else for the mere whim or pleasure of the owners; and therefore, although a man might have such a right of property in a dog as to maintain trespass or trover for unlawfully taking or destroying it, yet he is held, in the phrase of the books, to have 'no absolute and valuable property' therein which could be the subject of a prosecution for larceny at common law." See also *Woolf* v. *Chalker*, 31 Conn., 121.

It is found by experience that the destructive instincts of dogs, at the best of comparatively little utility to the people of the state, are so great as to render sheep raising (an industry of great benefit to the state,) practically impossible without some extraordinary legislative interposition. The act in question was therefore adopted as a measure of internal police, having the two-fold object in view of encouraging the rearing of sheep on the one hand, and of discouraging the keeping of dogs on the other; it is therefore perfectly constitutional and legitimate in its object. *Mitchell* v. *Williams*, 27 Ind., 62.

But is the act valid in its methods of accomplishing the object in view?

And this brings us to the precise point of the objection. Why require the town to assume the burden of paying the damages in the first instance, and of bringing suit to recover the amount either of the owner of the dog or of the town where he happens to reside?

The general answer is, that as a system of police regulation it cannot well be made effectual for the accomplishment of the objects except through some such agency on the part of the towns.

And as to the objection that it is contrary to natural right and justice, our answer is—

1st.  By the provisions of the act the town treasury is relieved and replenished by the special tax or license fees which the keepers of all dogs are compelled to pay, upon penalty of being criminally prosecuted, or of having the dogs killed or muzzled.  In the long run these license fees will in all probability amount to more than any town will be required to pay.

2d.  The town called upon to pay the damages has by the same act a remedy over against the owner of the dogs doing the damage, and so finally the liability falls on the party in fault.  The law assumes that this remedy over will be effectual.

3d.  In further vindication of the justice of casting the burden and duty upon towns to the extent mentioned, it should be observed that towns have some responsibility in the premises, and can do something to prevent or diminish the evils complained of.  The history of legislation on this subject in this state, from the early colonial statutes down to that in question, will show that dogs have been continually under the ban of the law as administered through the police powers of the towns.  It is true that by the act of 1878, under which the proceedings in question were had, the powers vested in the town authorities for the destruction of dogs are more restricted than formerly.  But they still remain to some extent under that act.  Dogs not licensed are to be killed under the inducement of a bounty to be paid by the town; and by section eighth of the same statute every owner or keeper of a dog is required either to kill or muzzle his dog to the acceptance of the selectmen and subject to the order of the selectmen as to the removal of the muzzle.

In reaching the conclusion that the statute in question is valid, notwithstanding the weighty objections against it, we

have been guided by the safe and wholesome rule that where an act of the legislature admits of two constructions, one valid and the other invalid, courts should adopt the former and uphold the statute, if it may be done by any reasonable interpretation, though it be not the most obvious. *French* v. *Teschemaker et als.*, 24 Cal., 518; *The People* v. *San Francisco R. R. Co.*, 35 Cal., 606; *Bigelow* v. *West Wisconsin R. R. Co.*, 27 Wis., 478; *Duncombe* v. *Prindle*, 12 Iowa, 1; *Colwell* v. *May's Landing Water Power Co.*, 4 C. E. Green, 245; *Iowa Homestead Co.* v. *Webster County*, 21 Iowa, 221; *Rosevelt* v. *Godard*, 52 Barb., 533; *Hepburn* v. *Griswold*, 8 Wall., 603.

There was no error in the judgment complained of.

In this opinion PARK, C. J., and PARDEE, J., concurred; GRANGER and HOVEY, Js., dissented.