## FREY v. WOODWORTH, Collector of Internal Revenue.

(District Court, E. D. Michigan, S. D. December 23, 1924.)

No. 7128.

**1. Internal revenue ⬷7—Earnings of employees of municipally owned street railway not specifically exempted from income tax.**

The provisions of Revenue Act 1921, pt. 2, tit. 2, § 213 (b), (7), being Comp. St. Ann. Supp. 1923, § 6336⅛ff, exempting income derived from public utilities, or the exercise of essential governmental function, *held* not to apply to the income of employees of such municipalities so as to relieve them from payment of income tax under section 210, as amended by Act March 4, 1923.

**2. Taxation ⬷18—Federal government cannot tax governmental instrumentalities of state.**

The federal government cannot tax instrumentalities of the state employed in exercise of governmental functions.

**3. Taxation ⬷18—Municipality operating street railroad engaged in governmental function, and income of employee exempt from federal tax.**

City of Detroit, in operating street railway *held* engaged in governmental function, notwithstanding such activity is not mandatory, that passengers are required to pay fares, that by provisions of Const. Mich. art. 8, § 23, and Enabling Act (Pub. Acts Mich. 1909, No. 279) § 4, city is authorized to issue bonds on railway in excess of city bonding limit, and notwithstanding that by Pub. Acts Mich. 1915, No. 210, and Pub. Acts Mich. 1913, No. 5, such utility must pay state and county taxes, and the income of employees of such railway is exempt from federal income tax.

At Law. Action by Jacob Frey against Fred L. Woodworth, Collector of Internal Revenue. Judgment for plaintiff.

Paul T. Dwyer, Asst. Corp. Counsel, of Detroit, Mich. (Murphy & Defo, of Detroit, Mich., of counsel), for plaintiff.

Delos G. Smith, U. S. Dist. Atty., of Detroit Mich., and Nelson T. Hartson, Solicitor of Internal Revenue, and Alvin B. Peterson, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., for defendant.

SIMONS, District Judge. Suit at law brought by Jacob Frey, an employee of the Detroit street railway department, the municipally owned and operated street railway system of the city of Detroit, plaintiff, against Fred L. Woodworth, United States collector of internal revenue for the First district of Michigan, defendant, to recover income tax paid under protest for the calendar year 1923. The case was submitted upon an agreed statement of facts. The issues involved are: (1) Whether the income of the plaintiff derived as salary from the department of street railways of the city of Detroit is specifically and expressly exempted by the provisions of the Revenue Act of 1921. (2) Whether the operation of a street railway by a municipality is an exercise of a governmental function, exempting the employees of such street railway from the payment of income taxes on their salaries, due to the restraints upon the taxing power of the United States government resulting from constitutional implications.

### Statement of Facts.

During the calendar year of 1923 the plaintiff, Jacob Frey, was engaged by the department of street railways of the city of Detroit, state of Michigan, as a street car operator. During the calendar year 1923, and the year 1924, up to the present time, the defendant, Fred L. Woodworth, was the duly appointed, acting, and qualified collector of internal revenue for the First district of Michigan.

The plaintiff, Jacob Frey, on February 5, 1924, filed with the defendant, as such collector of internal revenue for the First district of Michigan, an individual income tax return on form 1040a, disclosing a net income of $1,954.23 for the calendar year 1923, and an individual income tax for such year of $38.17 which sum plaintiff then paid to the defendant collector under protest. The plaintiff filed a claim for refund on February 5, 1924, with the defendant, and said claim for refund was denied by the commissioner of internal revenue on March 22, 1924. The plaintiff thereupon brought this action at law to recover the taxes so paid, alleging that he is an employee of a political subdivision of a state, and that his earnings derived from the department of street railways of the city of Detroit are exempt from taxation under the provisions of the Revenue Act of 1921.

### Statutes Involved.

Subdivision (a) of section 210, Revenue Act of 1921, as amended by the Act of

March 4, 1923 (42 Stat. 1507), effective as of January 1, 1923:

"That in lieu of the tax imposed by section 210 of the Revenue Act of 1918 there shall be levied, collected, and paid for each taxable year upon the net income of every individual (except as provided in subdivision [b] of this section) a normal tax of 8 per centum of the amount of the net income in excess of the credits provided in section 216, except that in the case of a citizen or resident of the United States the rate upon the first $4,000 of such excess amount shall be 4 per centum."

Subdivision (a) of section 213, title II, part II, Revenue Act of 1921:

"That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever * * * form paid * * * and income derived from any source whatever. * * *" Comp. St. Ann. Supp. 1923, § 6336⅛ff.

Section 214(a), deductions allowed individuals. Section 6336⅛g.

Section 216(c), credit allowed individuals "in the case of a single person, a personal exemption of $1,000. * * *" Section 6336⅛h.

[1] I. Plaintiff contends that he is specifically exempted from the payment of income tax upon his salary by the express provisions of law, and relies upon subsection 7 of subdivision (b) of said section 213, title II, part II, of the Revenue Act of 1921. The applicable language of such subsection is as follows:

"Income derived from any public utility or the exercise of any essential governmental function and accruing to any state, territory, or the District of Columbia, or any political subdivision of a state or territory."

It must be perfectly clear from the reading of the language above quoted that the income exempted and referred to in the subsection is the income of the municipality, and not the income of the employee. I conclude therefrom without further argument or citation that there is no specific exemption of the plaintiff's income derived as salary from the municipal street railway by virtue of the section of the act above quoted. No other statute or constitutional provision is cited to sustain plaintiff's contention that he is exempted by express or specific provision of law.

[2] II. Plaintiff, therefore, is compelled to rely for his exemption, if he has any right to such exemption, upon such limitations upon the taxing power of the government of the United States as result from the implications of the Constitution of the United States, and the essential nature of the sovereignty of the state in its relation to the federal government. This question is not unattended with difficulty. It has been held from the earliest day that the power to tax is the power to destroy, and that, due to the indestructible nature of both the federal and the state governments, the federal government has no power to tax the instrumentalities of the state employed in the exercise of its governmental functions, and the state has no power to tax the instrumentalities of the federal government. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Dobbins v. Commissioner, 16 Pet. 435, 10 L. Ed. 1022; Collector v. Day, 11 Wall. 113, 20 L. Ed. 122.

[3] We are confronted at the outset with the question as to what activities of the state and of its political subdivisions constitute an exercise of its proper and essential governmental functions, and what activities do not, and we are confronted also with a consideration of the dual nature of municipalities. That the city has a dual character, and possesses two kinds of power, is not now questioned. A municipality is clothed with power that is governmental and public, and to the extent that such power is held and exercised it is clothed with sovereignty. It also possesses power that is private, and to the extent that such power is held and exercised the city is a legal individual. The first power is given and used for public purposes. The second is for private purposes. While in the exercise of the former the corporation is a municipal government, while in the exercise of the latter it is a corporate legal individual. Lloyd v. Mayor of New York, 5 N. Y. 369, 374, 55 Am. Dec. 347. This exposition of the dual character of the city has been approved by the Supreme Court of the United States in, among other cases, South Carolina v. United States, 199 U. S. 437, 461, 26 S. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737; Vilas v. Manila, 220 U. S. 345, 356, 31 S. Ct. 416, 55 L. Ed. 491. Respecting the inter-relationship between the state and federal governments, the court, in South Carolina v. United States, supra, says:

"There is something of a conflict between the full power of the nation in respect to taxation and the exemption of the state from federal taxation in respect to its property and a discharge of all its functions.

Where and how shall the line between them be drawn?"

Answering this question, the court, after .citing cases, declared:

"It is also worthy of remark that the cases in which the invalidity of a federal tax has been affirmed were those in which the tax was attempted to be levied upon property belonging to the state, or one of its municipalities, or was a charge upon the means and instrumentalities employed by the state, in the discharge of its ordinary functions as a government."

The salary of the plaintiff when paid to him no longer belongs to the state, or to its subdivision, the municipality, so it follows that his claim to exemption from an income tax upon his salary can only be sustained upon the assumption that the municipality, as a subdivision of the state in operating a street railway, is exercising the ordinary functions of government, and that it is not acting in its private capacity as a corporation. As the court in the South Carolina Case, supra, says:

"The exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those used by the state in carrying on an ordinary private business."

What are the criteria that are to be applied to a municipal activity in order to determine whether such activity is the result of an exercise of an essential or proper governmental function, or whether it is undertaken by the municipality in its private capacity? It is a delicate question and beset with difficulties. It has been held (South Carolina v. U. S., supra) that a state's dispensary system for the sale of liquor is a private business, and is not undertaken in the exercise of an essential governmental function; that businesses voluntarily conducted by a municipality, such as the furnishing of water for domestic purposes, gas, electricity, or other commodities (in some cases where the furnishing was for either public or private use), stand on the same footing as like businesses conducted by a private corporation or individual (Village of Palestine v. Sitzer, 225 Ill. 630, 80 N. E. 345, 8 L. R. A. [N. S.] 205; Briegel v. Philadelphia, 135 Pa. 451, 19 A. 1038, 20 Am. St. Rep. 885; Aiken v. Columbus, 167 Ind. 139, 78 N. E. 657, 12 L. R. A. [N. S.] 416; Clark v. Manchester, 62 N. H. 577; Thurston v. St. Joseph, 51 Mo. 510, 11 Am. Rep. 463; Coots v. Detroit, 75 Mich. 628, 43 N. W. 17, 5 L. R. A. 315; Hodgins v.

Bay City, 156 Mich. 687, 121 N. W. 274, 132 Am. St. Rep. 546); that a state owned railway, in so far as it operates in another state, is a private enterprise, and subject to the sovereignty of such other state (Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. Ed. 796); that, when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes on that of a private citizen (Bank of United States v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L. Ed. 244); that a municipal corporation engaged in the business of distilling spirits is conducting a private enterprise and subject to internal revenue taxation under the laws of the United States (Salt Lake City v. Hollister, 118 U. S. 256, 6 S. Ct. 1055, 30 L. Ed. 176).

It might seem from the foregoing that it should be a simple matter to determine that the operation of a street railway by a municipality is an exercise of its private, and not of its governmental, functions. A careful consideration, however, of a number of important cases dealing with this and analogous situations, and of illuminative expositions by authoritative text-writers, who have considered the historical development of public highways, leads to the conclusion that highways and means of intercommunication in which the whole community is interested have been from the earliest times the peculiar concern of governments. In an early case, that of Hart v. Bridgeport, 11 Fed. Cas. 681, No. 6,149, 13 Blatch. 289, Judge Shipman, writing the opinion, declares:

"Familiar examples of such governmental duties are the duty of preserving the peace, and the protection of property from wrongdoers, the construction of highways, the protection of health and the prevention of nuisances. * * * Execution of these duties is undertaken by the government because there is a universal obligation resting upon the government to protect all its citizens, and because the prevention of crime, the preservation of health, and the construction of means of intercommunication are benefits in which the whole community is alike and equally interested."

This consideration of the highway as the concern of governments is seemingly due to the fact that the highway is a means of communication for the whole community, rather than for the state or for the subdivision of the state which creates and maintains it.

In McQuillin on Municipal Corporations, vol. 1, par. 227, p. 514, it is said:

"The use of streets is designed for the public at large, as distinguished from the legal entity known as the city, or municipal corporation. The management of highways may be characterized as municipal duties relating to governmental affairs. During the early periods of English history, the high-ways were laid out and constructed directly by the government. The government assumed the immediate and sole management of them, and this was recognized as an essential governmental function. In this country the control of highways is primarily a state duty. They are everywhere maintained for the use of the public at large. To the commonwealth here, as to the king of England, belongs the franchise of every highway as a trustee for the public, and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers, railroads, canals, or public roads laid out by authority of the quarter sessions. In England a public road is called the king's highway, and, though it is not usually called the commonwealth's highway here, it is so in contemplation of law, for it exists only by force of the commonwealth's authority."

Of the same general purport is the discussion of Judge Cooley in his work on Constitutional Limitations, at page 583. It is in line with this reasoning, and on the theory that they are continuations of the public highway from one side of the water to the other, that ferries have been regarded as publici juris. McQuillin on Municipal Corporations, 893; East Hartford v. Hartford Bridge Co., 10 How. 511, 13 L. Ed. 518; People v. S. F. & A. R. Co., 35 Cal. 606; City of N. Y. v. Starin, 106 N. Y. 1, 12 N. E. 631; Hackett v. Wilson, 12 Or. 25, 6 P. 652; Reid v. Lincoln County, 46 Mont. 41, 125 P. 429.

In the recent case of U. S. v. King County, Wash., 281 F. 686, decided by the Circuit Court of Appeals for the Ninth Circuit, July 3, 1922, it was held that a county of the state of Washington operating a ferry was not required to collect and pay over to the government a transportation tax under Revenue Act 1917, pars. 500, 501, and 503 (Comp. St. 1918, §§ 6309⅛a, 6309⅛b, 6309⅛d), and Revenue Act 1918, par. 500 (Comp. St. Ann. Supp. 1919, § 6309⅛a), since the maintenance and operation of the ferry by the county was the exercise of a strictly governmental function, protected against taxation by the federal Constitution. In that case the court held:

"We understand it to be the duty of the government, whether national, state, county or city, to provide suitable roads, bridges and ferries for the convenience of the public; that when such a government undertakes to do so, and to itself operate them, it is in the exercise of a strictly governmental function, and that the public have a right to the use thereof upon complying with the terms and conditions legally prescribed."

I am unable to distinguish the case last above cited from the instant case, and in this decision of the Ninth Circuit Court of Appeals the government has, so far as I have been able to ascertain, acquiesced. The revenue tax sought to be imposed in that case was not a tax upon the county, but a tax upon the users of the ferry to be collected by the county. In this respect it is entirely analogous to the tax imposed by the Income Tax Law upon the employee of a municipal street railway, and, if it is to be considered that the operation of a ferry by a subdivision of the state is an exercise of a strictly governmental function, by the same process of reasoning, and having in mind the public character of highways, and their historical development from primitive trail to the results of highly specialized engineering science of the present, the operation of a street railway is equally an exercise of a strictly governmental function.

Another consideration must contribute to this view. It is impossible to conceive of the existence of the modern city of 1,000,000 or more inhabitants without some system of rapid transportation. The street car system of a modern city, whether its cars are operated upon the surface, overhead, or underground, constitutes the veins and arteries of the city necessary to its very life. Upon its proper functioning depends inevitably the efficiency of government in preserving the peace, protecting property and health, and preventing nuisances. Without it the city cannot exist. Without it the government cannot function in any of its essential respects. Must it not be said, then, that the provision for such a street railway system, whether operated by the municipality or by private corporations, and for the regulation and control thereof, is a governmental function, and does it become any less a governmental function if the city itself operates the system instead of permitting it to remain in the hands of private persons or corporations? The decision and the reasoning in the case of U. S. v. King County, supra, seem to answer these questions. With the economic aspects of the case we are not concerned in a judicial inquiry.

It is contended by counsel that one of the tests to be applied to a municipal activity in order to determine whether it is an essential governmental function is to ascertain whether the activity of the municipality is permissive or mandatory. I fail to see the importance or pursuasiveness of this test. There are many things which the Constitution of Michigan and the Constitutions of other states permit cities of a certain class to determine upon that are strictly within the limits of governmental functions. Some cities have established municipal courts, while others have not; some cities have a commission form of government, and others have the old system of city government. Such institutions are permitted to be determined upon by the city, and in that sense are permissive rather than mandatory. It does not follow that, because establishment and maintenance of a municipal court or a commission form of government are permissive, such institutions are not created in the exercise of governmental functions.

Neither is it an answer to the proposition that the maintenance of a street railway is a governmental function to point out that the use of the cars is not open to the general public, but only to those who pay a fare. There are many activities created in the exercise of governmental functions which may be resorted to only by those citizens who pay some fee. It is only necessary to mention the fact that a fee is required of all those who start suits in the courts to emphasize this point. It will not be contended that, because an entrance fee is charged before a suit can be started, the maintenance of courts is not a governmental function. Nor is it an answer to point out that always in the past, and generally in the present, street railway systems have been and are conducted by private corporations, and not by municipalities. There was a time, and within our own brief history, when war was waged by means of mercenaries and privateers. Can it be said that the maintaining of an army and navy is not therefore a governmental function?

It is also urged that in the instant case the operation of the street railway cannot be construed as a governmental function because by the provisions of the state Constitution (section 23 of article 8), and by the provisions of the Enabling Act, section 4 of Act 279 of the Public Acts of Michigan, 1909, as amended, the city is authorized to issue bonds for street railway purposes in excess of the general bonding limit fixed by law, secured only upon the property of the utility, and also because, by the same statute, as amended by Act No. 5 of the Public Acts of 1913, and by Act No. 210 of the Public Acts of 1915, it is provided that, when a transportation utility is acquired, state and county taxes shall be paid thereon as if privately owned as well as local taxes on any portion of such property lying outside of the city limits. It is, of course, perfectly competent for a state to so safeguard the undertaking by a municipality of the operation of a street railway that it will secure the city against entering upon such an undertaking improvidently, and to insure that it will be undertaken only under such economic conditions as promise its successful operation, but such limitations and safeguards put upon the operation of the utility by the state do not, in my view, affect the governmental character of such activity, and with the economic or political reasons for such limitations I am not called upon to deal. It is also competent for the state to tax its own instrumentalities just as the federal government taxes its own officers and instrumentalities through the very income tax laws herein considered.

I conclude from the foregoing that the maintenance and operation of a street railway system in connection with the public highway by a municipality is an exercise of a strictly governmental function, and that by the implications of the Constitution of the United States the government of the United States is not authorized to tax the income derived by any employee of the Detroit Municipal Street Railway, and in such maintenance or operation, and that such employee, as to such part of his income as is derived from his salary as such employee, is exempt from the Income Tax Laws of the United States. Judgment will be entered in favor of the plaintiff in accordance with this opinion.