WILLIAM A. COOTS v. THE CITY OF DETROIT.

*Municipal corporations — Negligence — Injury to member of fire department by reason of defective street—Master and servant—Liability of city.*

1. The *statutory* duty imposed upon the city of Detroit to keep its streets in repair, and reasonably safe and fit for the public travel, extends to the members of the fire department, the same as to others of the traveling public.

2. The relation of master and servant does not exist between the city of Detroit and members of its fire department.

Error to Wayne. (Reilly, J.) Argued June 7, 1888. Decided July 11, 1889.

Case for injury by reason of defective street. Defendant brings error. Affirmed. The facts are stated in the opinion.

*John W. McGrath* and *Fred H. Warren,* for appellant.

*Dickinson, Thurber & Hosmer (Elliott G. Stevenson,* of counsel), for plaintiff.

Morse, J.  This is an action brought by the plaintiff against the city of Detroit to recover damages for injuries received by reason of the defective condition of Michigan avenue between Fourteenth and Fifteenth streets.

He recovered a judgment for $10,000 in the circuit court for the county of Wayne, before a jury.

The facts, as shown by plaintiff, are substantially as follows:  At the time of the injury he was in the employ of the fire department as an engine-driver.  The engine-house was situated on Sixteenth street, four blocks from Michigan avenue.  Plaintiff had been in the employ of the fire department for four years as a driver.

July 6, 1886, there was an alarm of fire from box 319, which was on the corner of National avenue and Locust street.  He drove his engine down Sixteenth street, to Michigan avenue, and turned on that avenue to go to Twelfth street.  Between Fourteenth and Fifteenth streets the right fore wheel of the engine dropped into a hole, and he was thrown from his seat, and fell against the engine, severely injuring him.  At this time he was following the hose cart, as was customary in going to a fire.  A lieutenant of the fire department was on the hose cart, and directed the course to be taken to reach the place of the fire.

The hole into which the wheel dropped was about 18 inches deep, from 3 to 4 feet in width, and about 10 feet in length crosswise of the street.  The plaintiff was not aware of its existence.  He knew of a bad spot in the street on the other side before reaching the place of the accident, and had changed his course to avoid it.  When hurt he was driving nearly in the center of the street, with the wheels on one side running between the rails on the street-car track.

He testified he did not notice the hole until the wheel went into it, as one of the horses jumped it.  He had "to look out for street cars, for people passing, for brick wagons and

farmers, people crossing the street, etc." He claimed that he had perfect control of his team, and was keeping a sharp lookout to avoid accidents.

It appeared without dispute that this hole was caused by the street being out of repair, the paving blocks and boards underneath them having been removed because they were worn out and useless.

By the charter of the city of Detroit the board of public works are given the entire charge and control of the repairs of paved streets within the city. It was shown that about the first of June, 1886, the board of public works were notified that the common council of the city had directed by resolution that the pavement on Michigan avenue, between Thirteenth street and Mt. Hope avenue, be repaired, the expense to be paid out of the general road fund. This territory embraced within its limits the spot where the accident occurred. To this resolution the board of public works replied, in a communication stating that the pavement was laid in 1871, "and is completely worn out, and no blocks left to repair the same," and recommending that the street (Michigan avenue) should be "repaved entire with stone."

The secretary of the board testified that the board of public works had notice that Michigan avenue, between Thirteenth and Sixteenth streets, was out of repair for several weeks prior to June 1, 1886; therefore the question of notice is out of the case, and need not be considered.

The first objection against the judgment is that the plaintiff was guilty of contributory negligence, and it is claimed that the jury should have been so instructed, and a verdict directed against him. It is argued that he ought to have seen this hole; that it was a defect so open and notorious that, if the plaintiff had been exercising ordinary care and prudence he could not have failed to have discovered it.

This argument would be of great force, and perhaps conclusive, if applied to an ordinary traveler upon this street.

But the plaintiff, by his occupation, and under the orders of the fire department, by which he was employed, was obliged to drive as rapidly as possible to the scene of this fire. He must also take the streets marked out for him by his superior officer upon the hose-cart. As he testified, he was compelled as a necessity to keep his eyes open, and be on the watch for a variety of things, to save accident and peril to himself and to other people who were traveling, and had a right to travel, on this street. Consequently he cannot be held to the same degree of negligence as one who might drive on this street as slowly as he pleased, or who need not take it at all if he knew it was out of repair. While looking out for a street-car or a wagon, or even passengers on the street, he could not well keep his eyes upon the ground all of the time, and it might well happen that in a moment when his sight was directed to another peril, and while he was striving to avoid it, his forward wheels, or one of them, wou'd drop in a hole before he noticed it, and without his fault. This part of the case was properly submitted to the jury upon the evidence.

It is also claimed that the defect in the street that caused this accident was within one of the risks that the plaintiff took in his employment; and the court was asked to instruct the jury that the plaintiff having voluntarily entered into the service of the fire department as an engine-driver, with full knowledge of the kind of work he was expected to do, and while in such employment, and in the regular discharge of his duty as such fireman, he was injured by driving into a hole in one of the streets of the city, he could not recover, as this was one of the dangers incident to his employment.

I do not think the court erred in refusing this instruction.

I know of no rule of law that would compel the plaintiff to take notice that the city of Detroit, through its officials, would, after notice of such a defect as this, violate the plain provisions of the statute requiring its streets to be kept in " good repair, and in a condition reasonably safe and fit for

travel;" and it would be not only absurd, but a manifest failure of justice, to hold that the city of Detroit must be excused from liability because the plaintiff must, as a matter of law, presume and take notice that the city will violate this statute and disregard the duty laid upon it by the Legislature. No more need be said upon this subject.

It is also contended that the plaintiff is barred from his action against the city because section 1, chap. 18, of the charter of the city of Detroit, provides that any person who may be hereafter totally disabled in the discharge of his duties as such fireman for duty may be placed upon the list of retired firemen by a vote of the fire commission. Such commission may in like manner place upon such list for disability any fireman who has been employed by said fire commission for a period of 25 years subsequent to October 24, 1860. Such retired firemen receive a sum equal to one-half of their annual salary paid them at the time of their retirement annually thereafter, to be paid in monthly payments during their natural lives. No person so retired shall receive more than $450 per annum, and said commission may place on such list the names of persons who became totally disabled in their employ prior to the passage of the act authorizing the commission to retire and pension firemen.

The argument is that the Legislature, recognizing the dangerous nature of the employment, authorized the city of Detroit, through its fire commission, to thus pension its firemen for total disability, and that the plaintiff is to be presumed to have known of this provision of the charter, and to take his employment with reference to and in view of it; and that the logical conclusion, therefore, is that this provision of the charter is intended to be in lieu of all other claims which the fireman might otherwise have for injuries received while in the line of his duty under his employment.

This provision in the charter was not inserted until 1885, and after the plaintiff had entered the employment of the

fire department.    He cannot, therefore, be said to have entered the service in view of this prov·sion.

Nor do I think he could be bound by it if he had.    This provision is only permissible.    The fire commission may retire a fireman for total disability, or they may not, as they see fit.    They have no power to retire any employé who has not served for 25 years since 1860 for any less reason than a total disability.    And it would seem that the commission are the sole judges of whether the disability is total, or whether it was incurred in the line of duty.    The plaintiff has not assented, by word or deed, to any arrangement whereby he shall forego his claim for damages for this unlikely happening,—this faint hope of a pension from the fire department. No steps have been taken to retire him, and there are no means by which he can compel such retirement.

It cannot be said that by his hiring, or by his remaining in employment after knowledge of this law, he contracted to give up all claims he might thereafter have against the city of Detroit for injuries received in the line of his duty through the negligence of the city, because he would thereby be required to give up something for nothing.    Such a contract would not be mutual, because there is nowhere any binding or legal obligation upon the part of the city or the fire commission to retire and pension him.

The counsel for the city argues that " may " in the law means " shall " or " must;" that this provision entered into and became a part of the consideration of every contract made between the city of Detroit and its firemen since the passage of the act, and that the courts would enforce its provisions in favor of every fireman totally disabled while in the employ of the fire department.    If this contention is correct, why did the act provide that such firemen " may " be placed on the list " by vote of said commission?"    If the duty is imperative, why should the commission vote to perform it before it can or may be done?

It is plain enough that the whole matter of the retirement and consequent pensioning of disabled firemen is by this act placed within the discretion of the fire commission, who may pension a totally disabled fireman or not, as they see fit. The only object of the passage of the act was to grant them this power if they desired to use it, which power they did not possess before it became a law.

No authority is cited to sustain this idea that this provision of the charter bars the plaintiff in this action, and it is unlikely that any such authority can now or ever will be found.

The court was asked to instruct the jury as follows:

"It appears in this case that the board of public works have charge and control of the streets in the city of Detroit, and that they failed and neglected, after notice and direction by the common council, to repair the defect in the street. which caused the accident.

"In this connection I charge you that the board of public works and the members of the fire department, all being in the employ of the city of Detroit in carrying on its general business, are fellow-servants; and if the jury believe that the accident to the plaintiff would not have happened but for the careless and negligent failure of the board of public works to repair the pavement on M.chigan avenue, after being directed by the common council so to do, then the plaintiff cannot recover, for his injury would be directly chargeable to the negligence and carelessness of a fellow-servant."

It is also intimated in the brief of defendant's counsel in stating their six general propositions of error, incidentally,. in considering the point that the plaintiff, when he voluntarily entered the service of the fire department, took upon himself all the risks and dangers incident thereto, that this injury must be considered as occurring from the negligence of fellow servants. But the point was not strenuously urged, and it does not seem to me that there is any merit in it.

It may be true that the fire commission could not sue the board of public works or the city of Detroit for injuries to the engine, or the horses drawing the same, occasioned by a

defect in the streets. But the plaintiff, by entering the service of the fire department, does not lose his personality or his manhood; he does not become a mere machine, a block of wood, nor yet a mere animal. He cannot be considered in any sense the property of the fire commission. And the fire commission is not suing the city for the damages he has received, as it would have to sue if an action was maintainable for the loss of a horse or injury to an engine. The plaintiff for himself, and in his own right, and independent of his relations to the fire department, is suing for a personal injury to himself caused by the neglect of the city.

If the theory of the request asked be good law, then there is no person in the employ of the city, or any of its agencies, nor any official, from mayor down to constable, who can recover for injuries caused by a defective street while he is in his employment, or in the discharge of his official duties, even if his employment or the duties of his office have no connection whatever with or relation to the care and control of the streets of the city. For instance, a constable, while walking in the streets for the purpose of serving process, would be without relief if he should be injured by a defect in the same; and a person employed to sweep the city-hall, or scrub its steps, if sent through the streets for a broom or brush to work with, would be a fellow-servant of the officials and employés whose duty it is to keep the streets in good repair. The doctrine of fellow-servant has never been carried to this extent by any court.

It is said that this is the first instance of an attempt to hold a municipality liable for an injury to a fireman in the performance of his duties under his employment. This is a mistake. In the case of *Palmer v. City of Portsmouth,* 43 N. H. 265, 267, this question was involved, and it was held that the principle—

"Applied by the courts in the case of the servants of railroad companies who have sustained injuries in the course of

their employment does not seem to us at all applicable to the case of injuries sustained from defects of highways. The liability for the damages sustained in such cases is imposed by statute, which provides that in case any special damage shall happen to any person by reason of obstructions, etc., he shall recover his damage in an action against the town. No exception is made, and we can see no reason for making any in such a case."

Our statute giving damages to any person injured by reason of streets and highways not being in good repair, or in a condition reasonably safe and fit for travel, through the negligence of the city or township, makes also no exception of persons or their occupations; and there is no reason in the law or in good sense why an engine-driver in the employ of the fire department, whether in or out of the line of his employment at the time of the injury, should suffer such injury without redress or recompense under the statute, from and by reason of the city's negligence in the care of its streets, than should any other citizen.

A fireman takes, like every other employé, certain risks by reason of his employment. He may be injured by his fellow-firemen, by falling walls or building, or by a score of accidents that are liable to happen at a fire, or going to or from one. But the injury he receives from the negligence of the city in the care of the streets through which his employment takes him is no more one of the risks he voluntarily takes in his employment than would be an injury that he might receive from the negligence or wrong of some one of his fellow-citizens of Detroit, as he was passing along the street. If this hole in the street, for instance, had been an excavation made by some abutting lot-owner on the street, and negligently left open, is there any sound reason why the plaintiff could not have recovered from such lot-owner damages for his injuries, if such injuries were occasioned through no fault of plaintiff? The answer is obvious. The fact that plaintiff was a fireman would weigh no more in

such case than if he was an express wagon driver, or of any other occupation.

The last objection to the judgment is that it is too large; that the damages found by the jury are excessive; and for this reason the judgment should be set aside, and a new trial granted.

But, if the damages are excessive, it is beyond our power, under the law, to remedy the wrong. We cannot cut down the verdict or grant a new trial for this reason. It is our province alone to determine whether any errors of law have taken place in the trial of the cause or the proceedings before judgment, and whether or not a proper judgment has been entered upon the verdict of the jury. We have nothing to do with the errors of the jury, if any have been committed, in the settlement of disputed questions of fact, or in the award of damages.

Within the limit of our authority to review this case I find no error, and the judgment, therefore, must be affirmed, with costs.

LONG, J., concurred with MORSE, J.

CHAMPLIN, J. Members of the fire department of the city of Detroit, when acting in discharge of their duties, are not servants or agents in the employment of the city for whose conduct the city can be held liable, but they act rather as officers of the city, charged with the performance of a certain public duty or service, and no action will lie against the city for their negligence or improper conduct while acting in discharge of their official duty. *Hafford v. New Bedford*, 16 Gray, 297. However appointed or elected, such persons are public officers, who perform duties imposed by law for the benefit of all the citizens, the performance of which the city has no control over, and derives no benefit from in its corporate capacity. The acts of such public officers are their own

official acts, and not the acts of the municipal corporation or its agents. *Fisher v. Boston*, 104 Mass. 87; 2 Dill. Mun. Corp. § 976 (774). Hence the relation of master and servant does not exist between the city and members of its fire department. *Jewett v. New Haven*, 38 Conn. 368; *Knight v. Philadelphia*, 15 Wkly. Notes Cas. 307.

This doctrine was laid down in the case of *Freeholders v. Strader*, 18 N. J. Law, 108, 121, as follows:

"Where a corporate body, whether of a municipal or of a private character, owes a specific duty to an individual, an action will lie for a breach or neglect of that duty whenever such breach or neglect has occasioned an injury to that individual; but if such corporation owe a duty to the public, and neglect to perform it, although every individual comprising that public is thereby injured, some more, some less, yet they can have no private remedy at the common law."

And in the later case of *Condict v. Jersey City*, 46 N. J. Law, 157, which was a case where the board of public works employed one Roberts to remove ashes, which had been placed in receptacles for that purpose, and cart them off to the dumping grounds,—both horse and cart belonged to the city,—and Roberts by his negligence in dumping killed plaintiff's intestate, it was said:

"It is the settled law of this state that an action will not lie in behalf of an individual who has sustained a special damage from the neglect of a municipal corporation to perform a public duty, unless the right to sue for such an injury is given by statute."

In *Wild v. Paterson*, 47 N. J. Law, 412, where action was brought against the city by a member of the fire department for injuries sustained by reason of its failure to keep a fire-engine in repair, the court said:

"The relation is not the ordinary relation of master and servant. Employés of such corportions in the execution of its public duties have been held to be mere instruments in the performance of such duties, and to act as public officers charged with a public service;" citing *Condict v. Jersey City*, 46 N. J. Law, 157.

See, also, *Barney v. Lowell,* 98 Mass. 570; *Hayes v. Oshkosh,* 33 Wis. 314. And such, also, is the settled law of this State.

Had the accident which occasioned plaintiff's injury happened by the defect in the axle of the engine, or other defect in the machinery or apparatus, instead of through a defective street, he could not have recovered, for the reason that the relation of master and servant did not exist between them, and the city owed no duty to the members of the department to provide suitable and safe apparatus.

The third, fourth, and seventh requests of defendant's counsel were as follows:

"3. It is a general rule of law that, when a person engages in a business or line of employment deemed hazardous or dangerous, he assumes the risks and dangers incident thereto, and cannot demand compensation from his employer for an accidental injury.

"4. An employer cannot be held liable for injuries received by an employé who has voluntarily assumed the risk of the employment with full knowledge of the methods employed; and in this case, it appearing that the plaintiff was in the employ of the city of Detroit as fireman; that he entered such service voluntarily, and with full knowledge of the kind of work that he was expected to do; and that while in such employment, and in the regular discharge of his duty as such fireman, he was injured by driving into a hole in one of the streets of said city,—I charge you that this was one of the dangers incident to his employment as such fireman, and that he cannot recover."

"7. Members of the fire department are presumed to have cognizance of such defects in the construction or condition of the streets in their respective fire districts as are open to observation, and to take the risk of accidents therefrom, and to use reasonable care in examining their surroundings."

The general rule of law is well stated in the third request, and was sufficiently covered by the charge of the court; and so with the principle stated in the fourth request.

These principles apply to cases where the relation of master and servant exists between the employer and the employed.

But in cases where the employed perform duties imposed by law for the benefit of all the citizens, as in a fire department of a city, as before stated, the relation of master and servant does not exist, and the liability or non-liability of the city to a member employed in such department does not depend upon that relation. It may be stated that the city is not liable to a person employed in the fire department for injuries arising from accidents received in the course of such employment, unless the liability is created and a right of action is given by statute.

The question of liability of the defendant to the plaintiff is therefore reduced to this: Does the statutory duty imposed upon the city to keep its streets in repair, and reasonably safe and fit for the public travel, extend to the members of the fire department, the same as to others of the traveling public?

I can see no good reason why it should not. The statute makes no exception of the kind. It reads that—

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect," etc., " of the city to keep the same in good repair, and in a condition reasonably safe and fit for travel."

The same question was considered by the supreme court of New Hampshire in *Palmer v. City of Portsmouth*, 43 N. H. 265. Bellows, J., speaking for the court, said:

" The principle which has been applied by the courts in the case of the servants of railroad companies who have sustained injuries in the course of their employment does not seem to us at all applicable to the case of injuries sustained from defects of highways. The liability for the damages sustained in such cases is imposed by statute, which provides that in case any special damage shall happen to any person by reason of obst uctions, etc., he shall recover his damage in an action against the town. No exception is made, and we can see no reason for making any in such a case."

The action was brought by a fireman who was injured while hastening to a fire by coming in contact with some pieces of board left on a joiner's work-bench in the street.

It is a proper use of the streets of a city to pass over them with a fire-engine in going to a fire, and they should be kept in such reasonable repair as will be safe and fit for the purpose of this kind of travel, as well as any other that the public require. The service demanded of those having the management of apparatus for the extinguishment of fires is that they shall respond promptly, whether at night or by day, to alarms of fire, and get to the scene of the conflagration with such dispatch as is reasonable and consistent with the safety of the public and themselves. They have a right to expect that the statutory duty enjoined upon the city will be observed. They take all the risks incident to their employment, without any remedy over against the city in case of injury, unless such injury is occasioned by a neglect of duty positively and specifically enjoined upon the municipality by statute.

· The risks of the employment assumed by them are sufficiently numerous and dangerous, without adding thereto the risk of defective streets, which the city is enjoined to keep in repair. As to such streets, their rights are no greater and no less than those of any other person having a right to use such streets.

As the questions of defendant's negligence, and its liability under the statute, and the contributory negligence of the plaintiff, were properly submitted to the jury, and they having found those questions of fact in favor of the plaintiff, I concur in affirming the judgment.

CAMPBELL, J. Plaintiff, who is and has been for several years in the employ of the city of Detroit in the fire department, and who was in July, 1886, driver of one of the steam fire-engines, drawn by horses, sued the city of Detroit for injuries received while driving to a fire on the sixth day of that month, during the day-time. The accident happened on Michigan avenue, and was caused by a fore wheel of the engine jolting in a hole in the pavement, which jarred plaint-

75 MICH.—41.

iff, and threw him against a part of the engine, that strained and injured his back. The injury turned out to be severe, and disabled him for a time, and has partially disabled him ever since. The jury rendered a verdict of $10,000, which appears to be a very heavy one, considering all the testimony, but which we need not now consider separately.

An objection is made that plaintiff, while employed in the service of the city, assumed all the risks of his employment, and that he cannot recover damages for injuries received during the service, and in the course of his work; and in this connection it is pointed out that provision is made by law for pensioning disabled firemen, which is not done in the case of any other persons in public employment under the city. The plaintiff had been kept in service and on full pay, and therefore had not been pensioned under the statute. It is a statute passed in 1885,—

"To provide for the retirement of aged and disabled firemen, and the payment of pensions to the wives and children of deceased firemen killed in the service of the city of Detroit,"—

Approved June 16, 1885.

It authorizes firemen who since 1860 have or shall have served 25 years to be placed on the retired list by vote of the commission for disability. It does not require, although it permits this for mere length of service, because there are probably a good many who after that service are as able as ever to serve and to earn their full wages. It also provides that any person in the service who is or may be thereafter "totally disabled, in the discharge of his duty, as such fireman for duty," may in like manner be placed on the list of retired firemen. All retired firemen are to receive during their lives a sum equal to half of their salary when retired, but not to exceed $450 per annum. Provision is also made for cases of death. Provision is also made for cases where persons cease to be entitled to pensions; but this prob-

ably was designed to reach the cases of members of firemen's families who by reason of marriage or passing a certain age (in case of infants) have no further claim.

Under this statute it is evident that the fire commission need not retire a fireman of any age who is willing to continue in the active service, if they choose to keep him employed; and it is also clear that they may find special work for a person not able to do all kinds of service. It may be an object to the fire commission to retain in active employment persons who will be useful, and it will always be an object to the fireman to get full, instead of reduced, wages. But, while this amount of discretion is left to the commission, it seems to us that the object of the statute is to secure to deserving firemen an absolute right to go upon the retired list after 25 years' good service, and to persons disabled by injuries received in the course of duty a similar right.

Upon the argument we were not at first impressed so much as we have been since by the claim that the plaintiff was injured by one of the risks which were incident to his employment.

It appears from the record that it is customary for the steam-engines to follow the lead of the hose cart, on which there is a captain or lieutenant of the force. The city government has nothing to do with the selection of these officers or of the firemen. It cannot remove or discipline them. They are under the exclusive orders of the fire commission. When a fire breaks out, their duty is to go to the place of the fire as speedily as they can, and they must go in the way the officer directs. It may, and often will, happen that the officer knowingly or ignorantly chooses a way that includes roads out of repair, and having places inconvenient and involving some risk of injury. A road that furnishes better average facilities for rapid running, although having bad spots in it, may be thought better for his purposes than one that, although safe throughout, is not well adapted to high speed with such

heavy machines. In the present instance it appears that the pavement on Michigan avenue was known to everybody in the department to be in bad order in many places, and in such a way that, while rather inconvenient than unsafe for ordinary travel, it would involve mischief almost inevitably to a heavy machine run rapidly over it, and not slacked at the rough places. With all of the defects, it was probably superior to the unpaved streets in the district for use by heavy engines, which cannot be run fast over ordinary natural roads. It is the duty of the firemen to go to a fire, whatever may be the state of the roads, unless absolutely impassable. And it is their duty to obey orders in the road chosen by their superiors. They do not lose their personality so far as to entitle them to incur risks which they can avoid by the use of their own common sense, and ought to avoid. But on all ordinary occasions they are subject to orders, and bound to run such risks as their duty involves.

The law is not entirely reasonable or entirely consistent on all subjects. Where made by statute, the legislative will stands in lieu of reason. And courts are not infallible, and may not see things alike. But it is the general purpose of both written and unwritten law to make no one liable who is not at fault. There are certainly exceptions in practice to this rule, and there is some vicarious responsibility which is founded on supposed policy, which does not strike all persons alike in its reasonableness. But no liability ought to be extended beyond what is reasonable, except in pursuance of legal rules, which to that extent override all questions of reason.

In those cases of employment where the employer does not have much personal knowledge of what is going on in its details, the rule is very general that every person employed assumes the risk that others employed may not always do their duty. There has been some refining, sometimes becoming rather metaphysical, upon the subject of how far this

community of employment extends, and who are fellow-servants. But the rule as laid down in the best sources of authority, and as we have usually followed it, is not one so much of personal as of occupational risk. There is no foundation for any doubt of the rule that every person must accept the natural risks of his employment. All precedents not absolutely binding on us should be tested by their conformity to this principle. They differ more or less on its application to particular cases or classes of facts. But we are bound to keep in sight the principle itself.

It is generally understood that the government and its agencies of all grades cannot properly be held responsible to persons in its employment who suffer injury from the neglect of any public body or agency. There is no difference in principle arising out of the relative rank of the agencies, and none has been generally recognized, although there may be anomalous decisions on this as on other subjects. There are some very safe employments, and some very perilous; but this has not made any difference. While governments cannot be sued, they generally provide in some way to meet such obligations as but for their official immunity might be made causes of action. Multitudes of cases must have arisen where persons in one branch of service have been killed or injured by reason of the wrong or neglect of those acting in other branches, but there has never been any recognition of such responsibility. Soldiers and sailors run other risks than those from the enemy or from exposure, or from other soldiers and sailors. Pensions are not always granted as liberally as they might be, but no one ever heard of a claim set up as a legal claim against the government for damages caused by official neglect or misconduct. There is no governmental agency, large or small, which does not have occasion at times to have work done for public purposes, or which does not have different classes of instrumentalities working separately in the general service.

The Detroit fire department is a public instrumentality intended to secure protection against a great public danger. From time immemorial municipalities have been accustomed to have provision made against fire, and, although fire departments have sometimes been made up of volunteer members, their public character has been none the less recognized. The department, in whatever manner organized, is a distinct branch of the public service. In the case of the city of Detroit the Legislature have seen fit to remove it from the direct control of the city, and place it under a separate commission, governed by law, and not subject at all in the immediate government of the force by the will of the city legislature. Although in a certain sense it is sometimes called a city agency, yet its members are in no proper sense city agents, in the usual meaning of agency. Their duties are not powers delegated by the city, but powers conferred by the law of the State. They relate to matters which public policy requires should be placed in the list of municipal affairs, and which are often put entirely within the control of the governing body of the city. But they are of such importance that the immediate control has been thought proper to be removed from the other city authorities.

The board of public works has in like manner and for similar reasons been to some extent removed from absolute city control. It was held in *Detroit v. Blackeby*, 21 Mich. 84, that in the absence of statutes municipalities were not liable for the mere neglect of any public officers whose duties were conferred by law, and not by agency. The same rule had been applied in other cases in this State, and a distinction had existed between acts done for the municipality and by its procurement and cases of neglect or non-feasance. Within a few years municipalities have been made liable by statute for the care of their public ways in some cases, and so far as the statute goes the neglect is imputed to the city or township as its own fault in law. The statute creating

this liability did so by expressly subjecting the officers to the discretion of the city authority. But whether liable or not to third persons for neglect of any of the municipal bodies, it has never been supposed that one municipal body could sue the city for the neglect or misconduct of another municipal body for acts or neglect which affects the interests in charge of either. If, for example, an engine should be injured by the fault of any of the several departments of city affairs, the fire commission could not sue the city for it.

There are more than possibilities that property in charge of any of the local bodies may be injured by the action of the others. A neglect of the water board may paralyze the fire department, as the firemen may do mischief to hydrants and water-pipes. Streets and sidewalks and lamp-posts have often been injured by the running and working of engines and fire apparatus. Firemen have been killed or disabled by things which were due more or less to municipal negligence. This is the first instance of an attempt to hold the city for it.

These instrumentalities form but one aggregate, and their relations are intimate and inseparable. Each, and the members of each, while acting in the performance of duty, are working in one common work. Each department has its own risks, and is bound, as far as may be, to guard against them. The duty of maintenance of public works in proper condition, where they are for public use, is for the benefit and convenience of the public, and not for that of the corporation itself. A city is under no duty to itself to keep streets in order for its own agencies or departments. The object of the statute giving damages for injuries on the streets was meant to protect the traveling public, and not the agencies of the municipality. While acting in the course of duty, each fireman is identified with his department. He has powers and privileges which private citizens do not possess, and he is bound to risks which others are not bound to run.

The undisputed facts, moreover, show that the use of ordinary care would have prevented this accident. The plaintiff was driving at such a speed as would of itself make it impossible to prevent serious mischief from encountering any defect in the way, and this defect was so obvious that it could not possibly have escaped his notice if he had kept his eyes out on the road he was driving on. Had he been driving at a usual rate, the accident could not have occurred without the grossest negligence, and could not have done much mischief. But it would be going beyond all reason to hold that, if any liability exists in favor of a member of the fire department at all, the statutory liability which is created for the benefit of careful travelers can be made to reach cases where the furious driving is in itself a source of danger on any highway, and would render any accident likely to bring about serious results.

The judgment should be reversed, with costs of both courts, and, as plaintiff's own showing is against his recovery, no new trial should be granted.

SHERWOOD, C. J., concurred with CAMPBELL, J.