THE CITY OF KANSAS CITY v. NELLIE McDONALD.

### No. 11126.

1. CITIES—*Fast Driving—Fire Department Excepted.* An ordinance making it a misdemeanor for any person intentionally to ride or drive any horse, mule or other beast faster than an ordinary traveling gait in any of the streets of the city is unreasonable when sought to be applied to the fire department in driving to a fire, and for that reason will not be enforced.

2. ———— *Accident Policy for Firemen.* The fact that a city having a paid fire department procured an accident policy for one of its firemen, under the provisions of chapter 363, Laws of 1895 (Gen. Stat. 1897, ch. 74, §§ 38–44), and that the amount of the policy was paid to the widow of said fireman after his death, is no defense to an action brought by her, under section 422 of the code (Gen. Stat. 1889, ¶ 4518, Gen. Stat. 1897, ch. 95, § 418), against said city for its negligence in causing said death.

3. ———— *Evidence of Obstructions in Streets.* In an action against a city for negligently allowing an obstruction, such as a pile of rocks, to remain in a street unguarded and without lights or other warnings to travelers thereon, by reason of which an accident occurred, it is competent to show that other obstructions not alleged in the petition narrowed the roadway, and also the condition of the street, together with all the surroundings at the time and place of the accident.

4. TRIAL—*Exception to Language of Counsel.* A mere exception to the language of counsel in argument to the jury, not preceded by any ruling of the court, is insufficient to raise a question as to the propriety of the language used.

5. CITIES—*Rules of Fire Department.* Rules of a fire department requiring its members to drive in the middle of the street when going to a fire are made for the safety of the men, teams, and vehicles; and a driver of a hook-and-ladder truck is charged with the use of no greater care and precaution for his safety by such rule than he would be if such rule did not exist.

6. ———— *Streets—Duties to Firemen.* Cities are required to keep and maintain their streets in reasonably safe condition for public travel, and are held to as great a degree of care toward a fireman driving over the same in discharge of his duties as they are to any other traveler.

7. ———— *Rights of Abutting Owners—Duty of City.* Persons constructing buildings abutting on a street have, in the absence

31—60 KAN.

of express permission from the city, the right to use temporarily a portion of the same for the deposit of necessary building material Such use, however, being exceptional and foreign to the purposes for which the thoroughfare was laid out and maintained, the city must exercise vigilance to the end that no traveler be harmed by such encroachment.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed May 6, 1899. Affirmed.

*F. D. Hutchings*, city attorney, and *T. A. Pollock*, city counselor, for plaintiff in error.

*Angevine & Cubbison*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: Nellie McDonald recovered a judgment in the court of common pleas of Wyandotte county against the defendant below for $7500 by reason of the wrongful acts, neglect and default of the city in causing the death of her husband. Andrew J. McDonald was a member of the fire department of Kansas City, Kan., and the driver of a hook-and-ladder wagon. On the night of August 10, 1896, in responding to an alarm of fire in the south part of the city, the truck upon which he was riding, while being driven at a high rate of speed, ran against and upon an obstruction in the roadway, consisting of a pile of rocks from 18 to 24 inches high and 40 feet long, extending into the street about 12 feet from the west curb. The violence of the collision threw McDonald forward upon the rocks and he was instantly killed. William Clarke, captain of the truck, was riding with McDonald at the time of the accident. The obstruction mentioned was in front of some houses then building and the rock was for use in their erection. There was at the time an ordinance of the city in force providing that persons engaged in the construction of any building

might occupy so much of the street in front thereof as was necessary for the purpose of depositing material for use in its construction, not over one-third of the width of the street so to be occupied. It was alleged in the petition that by the passage of said ordinance the city wrongfully and negligently authorized persons to obstruct the street, including South Seventh street at the place where the accident occurred, with earth, sand, gravel, stones, etc., without requiring them to place thereon guards, lights, or other danger-signals to warn persons passing of the existence of such obstructions. The defendant city, among other things, pleaded in defense the following ordinance :

"Any person who shall intentionally ride or drive any horse, mule or other beast faster than an ordinary traveling gait in any of the streets, avenues or alleys within the city, or so drive as to endanger the safety of others, or who shall so ride or drive as to be likely to cause other teams to be frightened or run away, shall upon conviction thereof be fined in any sum not exceeding $100."

The court below sustained a demurrer to that paragraph of the answer which pleaded the ordinance as a defense, and this is the first assignment of error. It is contended that the ordinance was proper evidence to show that McDonald, by its violation, was guilty of contributory negligence. We do not think that the ordinance was intended to govern the actions of firemen or regulate the speed of fire-engines or trucks. Such an intention is nowhere expressed, and if it had been the ordinance would have been unreasonable. Cities do not provide horses of high mettle, trained to propel speedily apparatus for the extinguishment of fires, and then impede them in their progress by a requirement that they shall not be

driven faster than an ordinary traveling gait. Various appliances have been devised by which such horses are harnessed with incredible speed that no time may be lost in reaching the fire with hose and other aids to prevent the destruction of property. It is of first importance that a fire be reached in its incipiency, and, to accomplish this purpose, the utmost haste is necessary. A compliance with this ordinance by the firemen and the enforced delay required by its terms would convert the fire department into a purely ornamental adjunct to the city government, proficient only on parade. In *Farley v. The Mayor, etc.*, 152 N. Y. 222, 46 N. E. 506, it is said :

"The safety of property and the protection of life may, and often do, depend upon celerity of movement, and require that the greatest practicable speed should be permitted to the vehicles of the fire department in going to fires. Section 1932 was intended to regulate the speed of horses traveling on the streets and using them for the ordinary purposes of travel, and from the nature of the exigency cannot apply to the speed of vehicles of the fire department on their way to fires."

The restriction as to speed, when applied to the fire department, renders the ordinance unreasonable, and unreasonable ordinances will not be upheld by the courts. (1 Dillon, Mun. Corp., § 319 ; *Crawford v. City of Topeka*, 51 Kan. 756, 33 Pac. 476 ; *Anderson v. City of Wellington*, 40 id. 173, 19 Pac. 719 ; *State v. Sheppard*, 64 Minn. 287, 67 N. W. 62.)

A general demurrer was also sustained to the fourth paragraph of the answer of the city, which reads :

"The defendant further says, that under and by virtue of the provisions of chapter 363 of the Laws of 1895, and out of the funds created and provided for by said law, it purchased, on the 7th day of August, 1896, an accident insurance policy for said Andrew

McDonald, in plaintiff's petition named, from the Travelers' Insurance Company, by which contract and policy said company agreed to pay, and did pay, to the plaintiff, on account of the death of said Andrew McDonald, by reason of the causes in plaintiff's petition set forth, the sum of $2000, which sum the plaintiff did receive and still retains."

There is nothing in the act of 1895 (Gen. Stat. 1897, ch. 74, §§ 38–44) implying that indemnity is furnished to the city against damages to the widow or next-of-kin of a fireman killed by its negligence. The accident policy cost the city nothing. The premiums were paid by foreign insurance corporations doing business in the state, a tax being laid by the state of two dollars a hundred upon the amount of all premiums on policies written for fire and lightning insurance within the limits of such city for each year. The law authorized the amount of the tax to be invested in the purchase of accident insurance upon the members of the fire department. The tax is collected by the state for the purposes mentioned, and the mayor and council in cities having a paid fire department are constituted its agents, charged with the duty of applying the amount of the tax to further the objects named. The demurrer to said paragraph of the answer was properly sustained. (*Coots v. City of Detroit*, 75 Mich. 628, 43 N. W. 17.)

Evidence was introduced by the plaintiff below showing that at the time of the accident there was a pile of sand, cinders and earth on the east side of the street south of but near the place where the first obstruction mentioned was situated. Counsel for the city complain that the admission of this testimony tended to convey to the jury an impression that the city was unmindful of the streets and permitted any and all persons to obstruct them. It was competent

to show the width of the roadway in condition for travel at and near the place of the accident, as it might properly be shown that one side of the street was higher or lower than the other, and the condition in general of the surroundings. There was proof tending to show that the rocks upon which the wagon struck were of light color, similar to that of the block pavement in the street, and hence not distinguishable from the pavement at night. Clarke, who was riding with McDonald, saw this pile of cinders and sand, and it was not improper for the jury to know of the existence of this obstruction and to consider whether McDonald also saw it and, in order to avoid it, was driving further west than he otherwise would have done. The jury found, in answer to a particular question submitted, that the sand and cinder pile was not one of the causes of the accident, so that the defendant below cannot be said to have suffered from the admission of that evidence.

Again, we cannot say that the evidence admitted in cross-examination of the witness Edmunds, showing that there was a movement on hand to reorganize the fire department, was prejudicial to the city. It would seem to be harmless in itself. We think, however, that counsel for plaintiff below went to greater lengths in his comments on this evidence before the jury than he should have done, making an application of the testimony not justified by the language of the witness. The defendant below, however, merely excepted to the language of the opposing counsel. No objection preceded this exception and the court had made no ruling. This was insufficient. "An exception is an objection taken to a decision of a court or judge upon a matter of law." (Gen. Stat. 1897, ch. 95, § 309; *Marder, Luse & Co. v. Leary*, 137 Ill. 319, 26 N. E.

1094; *Pike v. City of Chicago*, 155 id. 656, 40 N. E. 567.)  In *Marder, Luse & Co. v. Leary*, supra, the court said :

"The remark 'I except to the statement' meant nothing, in a legal sense, in the connection in which it occurred.  The court had made no ruling to which it was applicable, and if it was intended to be an objection it was ineffectual, because it was not pressed upon the attention of the judge and his ruling obtained thereon. (*E. J. & E. Rld. Co. v. Fletcher*, 128 Ill. 619, 21 N. E. 577.)"

The plaintiff in error urges that the court erred in refusing to permit it to show the rules of the fire department requiring that firemen drive in the middle of the street.  If there was such a rule its object was to insure safety to the men, teams and vehicles when going at a rapid rate of speed in answer to an alarm of fire.  A violation of any precaution affecting safety would have been equally negligent on the part of the driver whether the exercise of such precaution was demanded by the rules or not.  The condition of the street would largely determine the course to be taken, and what part of the street to be avoided, whatever the rule might be.  To drive a hook-and-ladder wagon in the middle of those streets upon which cable-car tracks are in use, with rough stone blocks between the rails, would be exceedingly dangerous to the driver and vehicle, and render collisions with street-cars probable.  The fact of the existence of a rule as claimed, which McDonald violated, would not demand of him greater care.  The condition of the street, as it appeared to him, should determine his course in driving, whether there was a rule on the subject or not.  There are cases where a violation of a rule would be a material consideration.  If a man were engaged in a dangerous employment, without an experience

fitting him to determine the safer of one or two courses which he was called upon to take, then rules for his guidance, fixed by persons skilled in the particular work or business, should be followed.

We have examined the instructions tendered by the city and refused by the court, and see no error in their refusal. The court instructed that McDonald was not in any manner responsible for any negligence of Clarke, the captain of the truck. They were not fellow-servants. (1 Beach, Pub. Corp., §§ 741–744; 2 Dillon, Mun. Corp. 977–980; *Lawson v. Seattle*, 6 Wash. 184, 33 Pac. 347; *Peters v. City of Lindsborg*, 40 Kan. 654, 20 Pac. 490.) The last case is authority for the statement that McDonald and Clarke were not servants of the city. That they were fellow-servants of some one else is immaterial. But if they were fellow-servants of the city, and if Clarke failed to notify McDonald of the existence of rocks in the street, and if he was guilty of negligence in not doing so, and if his failure to give such notice contributed to the death of McDonald, yet the negligence of the city was the primary and proximate cause, without which the accident would not have occurred, and the negligence of Clarke the remote cause. The claim that the death of McDonald was caused by the negligence of a fellow-servant, and that the city is not therefore liable, is untenable. We do not see how the failure of Clarke to notify McDonald of the danger can affect the city's liability. The negligence or omission of a stranger to notify McDonald could not excuse the municipality from the consequences of its own negligence.

The court below held, and so instructed the jury, that McDonald was a lawful traveler upon the streets, and as such the city owed the duty toward him to keep

and maintain its streets in reasonably safe condition for public travel — in fact, that he was entitled to the same protection as an ordinary traveler upon the highway. This ruling was correct. (*Coots v. City of Detroit*, 75 Mich. 628, 43 N. W. 17; *Palmer v. City of Portsmouth*, 43 N. H. 265; *Farley v. The Mayor, etc.*, 152 N. Y. 222, 46 N. E. 506.) In *Coots v. City of Detroit*, supra, it is held that a fireman is not held to that degree of care and caution in driving along a public street required of a common traveler proceeding at an ordinary gait.

The defendant below requested the court to submit to the jury seventy-eight particular questions of fact, thirty-five of which were refused. Many of the questions were immaterial, and some were repetitions of others. While it is the duty of the court to submit to the jury questions pertinent to the issues, we think the court performed that duty in this case.

As to the verdict being excessive, while the jury are restricted to the pecuniary loss suffered by the widow or next-of-kin, yet they are not confined, in estimating the damages, to any exact mathematical calculation, but are invested with considerable discretion, with which the courts will not interfere unless it has been abused. Considering the age and capacity for earning wages possessed by the deceased, his relations to his family, and his habits of life, we cannot say that the amount of the verdict was unreasonable. The case was carefully tried by the learned judge of the court below, and all legal rights of the defendant protected.

The ordinance permitting a use of a portion of the street for the deposit of building material thereon was not invalid. (Dillon, Mun. Corp., 4th ed., § 730.) In the absence of such ordinance a license thus to encroach upon the street might be implied, and a temporary oc-

cupation be lawful, from the necessities of the case, when buildings fronting on the street were being erected. Yet, such use being exceptional and foreign to the purposes for which the thoroughfare was laid out and maintained, the duty devolved upon the city to exercise vigilance with respect to the rights of a traveler who might be harmed by such obstructions in his way.

Several questions raised in the brief of the plaintiff in error are not discussed in this opinion, but we have examined the same and find nothing substantial in the claim of error. The negligence of the city was clearly shown. It suffered one of its principal thoroughfares to be obstructed in a place likely to occasion injury to persons having a right to travel thereon, and permitted this obstruction to remain unguarded and without lights or warnings to prevent accidents in the night-time, in disregard of a lawful duty imposed upon it.

The judgment of the court below will be affirmed.