*W. T. S. O'Hara,* for plaintiffs.

*Hamilton & Kirby, W. T. S. O'Hara, T. L. Gifford,* for defendants.

---

## NEGLIGENCE AS BETWEEN A FIRE DEPARTMENT TRUCK AND AN ELECTRIC CAR IN COLLISION.

[Circuit Court of Lucas County.]

THE TOLEDO RAILWAYS & LIGHT COMPANY v. ELIZABETH J. WARD, ADMINISTRATRIX OF THE ESTATE OF JOHN D. WARD, DECEASED.

Decided, October 31, 1903.

*Negligence—At a Crossing of Streets—Electric Car Running Twenty-five Miles an Hour Collides with Ladder Truck—Captain of Truck Killed—Verdict of $3,000 Sustained—Challenge of Jurors—Irregular Calling of Bystander by Order of the Judge—Judicial Discretion—Evidence of Custom in Slackening Speed of Cars at Crossings—Rules of Company Properly Put in Evidence—Fire Department Not Subject to Ordinance Limiting Speed of Driving Through the Streets.*

1   A bystander was called by the clerk at the direction of the court to fill a jury panel, at a time when the regular jury were in the consideration of a case. After he had been examined, but before

being sworn, the regular jury came into the room, and at the suggestion of counsel for plaintiff the bystander was asked to step aside, and one of the regular jury was called in his place. *Held:* That this could not be regarded as in effect a granting to the plaintiff of an additional challenge, but was within the discretion of the court, especially where the place of one called in an irregular way. was filled by a member of the regularly impanneled jury.

2. Evidence of a custom of slackening the speed of electric cars in approaching a particular street crossing is admissible in a trial involving a collision at that crossing, as bearing upon the question of contributory negligence on the part of the one injured.

3. And, likewise, where the one injured is a fire captain, a rule of the street railway company, requiring that the right of way be given to an engine or truck of the fire department, is admissible in evidence, as is also a rule requiring all cars to slacken their speed at prominent crossings.

4 Cross-examination of a witness tending to show his feelings toward the parties to the suit is proper as reflecting upon his credibility.

5. A fire department is not subject to an ordinance prohibiting driving or riding upon the streets at a rate of more than six miles an hour.

6. It is not prejudicial in a charge to the jury, relating to the damages which may be recovered on account of the wrongful death of a husband or father, to use the word "bereaved" in the sense of "deprived."

7. An electric car traveling at the rate of twenty-five miles an hour collided, at a street crossing at 1 A. M., with a ladder truck, which was being driven at the rate of eight miles an hour. The captain of the truck, fifty-two years of age and earning $900 a year, was killed, and a jury returned a verdict of $3,000 in favor of his estate. He left a widow and grown-up children. *Held:* That in the absence of evidence the law will presume that the decedent supported his wife; that the question of his contributory negligence was a proper one for the jury; and that the verdict was not excessive.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action was brought by defendant in error, who was plaintiff below, as administratrix, to recover for the death of John B. Ward, who was her husband. A verdict was returned in her favor for $3,000. Judgment was entered upon that, and this proceeding in error was brought to reverse that judgment. Ward was a captain in the fire department of the city of Toledo, being a captain of a hook and ladder truck with three men under

him—two truckmen and a driver. About one o'clock in the morning of December 24, 1901, an alarm of fire was sounded in the western part of the city, at the corner of Nebraska avenue and Hawley street; the truck of which Ward was captain responded and left No. 7 engine house at a few minutes before one o'clock, and some few squares from Dorr street reached Collingwood avenue and turned into it, going toward the fire. At the intersection of Collingwood avenue and Dorr street the truck was struck by a street car of the defendant company, running westward on Dorr street. The truck was partially demolished and Captain Ward so injured that he died in a few hours, and this action was brought against the railway company to recover damages for his death, on the ground that it was caused by the negligence of the employes of the railway company who were running the car.

The case was tried to the court and jury and the first error complained of was in the selection of the jury. When the case was called for trial, the regular jury, or the most of them, were at that time engaged in the consideration of another case. The court began the impanneling of the jury, and in order to fill the panel directed the clerk, there not being enough regular jurors present, to call one M. Loenshal into the box, he being a bystander, and when he took his seat in the jury-box he was examined by counsel on both sides, and was interrogated as to his relations with the railway company and its employes and on other subjects, and the record recites that after this examination no challenge to him for cause was made, but that shortly after the examination the regular jurors, who had been deliberating upon another case, agreed upon a verdict and came into the court room and were discharged from that case. Thereupon Judge Commager, who was one of counsel for the plaintiff below, made this statement to the court: "I will ask Your Honor to call the regular jurors instead of talesmen, if we have a regular jury here." Thereupon the court directed Mr. Loenshal, who had been thus called into the box, to step aside, and to this action of the court the defendant railway company objected and excepted. Then the court directed the clerk to call the regular jurors, and Andrew Baker

was called into the jury-box, presumably upon a call of the roll, as that would be the regular and proper way to call jurors. Then the plaintiff peremptorily challenged a juror, to which the defendant railway company objected and excepted, claiming that the court had no right after the juror, Loenshal, had been examined and no challenge for cause had been made, to direct him to step out of the jury box on the ground that the regular jury had come into the room, counsel for the defendant urging that he had become to all intents and purposes a regular juror and that they were entitled to have him remain in the jury-box; that the fact that the regular jury had come into the room did not affect the situation, and claimed that it was, in fact, giving to the plaintiff an additional peremptory challenge upon no ground stated in the statute. The record discloses that no challenge for cause was made to Loenshal, but after the regular jurors came into the court room the suggestion of Judge Commager was made to the court, as stated, and the court directed the clerk to call the regular jury.

In our judgment, there was no error in this proceeding of the court. Mr. Loenshal had not been sworn; he was not challenged "for cause," it is true, but he had been subjected to an examination by counsel for plaintiff, and in the course of that examination it is apparent that counsel concluded he would be an undesirable juror to sit in the case and that they did not desire to have him sit, and therefore suggested to the court that as regular jurors were present, one of them be called. There are three ways of challenging a juror under our statutes—he may be challenged peremptorily, he may be challenged for cause, and there is a challenge to the favor, which is a kind of a challenge for cause, under Section 5177, which provides:

"Any petit juror may be challenged also on suspicion of prejudice against, or partiality for, either party, or for want of a competent knowledge of the English language, or for any other cause that may render him at the time an unsuitable juror, and the validity of such challenge shall be determined by the court; and either party may peremptorily challenge two jurors."

It may have occurred to the court—we do not know—after hearing this examination of the juror and learning what was

elicited by that examination, that he was an unsuitable juror to sit in the case, and, upon reflection, the court may have concluded that in its discretion it would excuse him; that would be within the discretion of the court.

It may be remarked in passing that this juror was not called into the box in the regular way, as we read the statute. Where talesmen are called the statute makes it the duty of the sheriff to call them. If either party requests a special venire, the court may order it and give the names to the clerk, but the statute provides, Section 5173:

"But no person known to be in or about the court house shall be selected without the consent of both parties."

Mr. Loenshal, at the time he was selected was in the court room. There is no provision of the statute, to our knowledge, authorizing the court to direct the clerk to call a man in this manner into the jury-box, though it may be done, of course, by consent; but unless a special venire is asked for, the statute makes it the duty of the sheriff, or his deputy (the court constable may also act for him), to fill the panel. So that there was an irregularity in the calling of this juror into the box. We do not speak of this in the way of criticism, there being no objection made upon that ground, but we speak of it as a fact in the case, it being claimed that the court erred in directing Loenshal to step aside. In the first place he was not regularly in the jury-box, and that may have occurred to the court. But, beyond all that, we are of the opinion and hold that the court had a perfect right to direct a bystander or talesman who had been called into the box, to step aside before being sworn if regular jurors came into the room, having been detained in the jury-room until that time. It is the business of the regular jurors to sit in the trial of cases; they are summoned for that purpose and their names having been drawn in the regular way out of the jury-box, if they are present, parties and counsel have the right to have their cases tried to the regular jurors who have been drawn and summoned. Talesmen and bystanders are called and special venires issued to fill vacancies which are occasioned by the absence or challenge of the regular

jurors. It is not the policy of the law or the theory of these statutes that talesmen and bystanders shall sit on the jury when regular jurors are sitting idle in the court room. They are paid their per diem for performing this service, and their pay goes on usually whether they are actually sitting in a case or not, and it is in the interest of economy and good business policy for the court of common pleas to see that they are kept busy in the jury-box and not to call talesmen or bystanders when not needed. This man had not been sworn; he was not yet a juror, and whether he would sit or not was still within the discretion of the court.

A case in 63 Michigan was cited by counsel for plaintiff in error, but in that case a regular juror was excused by the court without any cause or reason, and the Supreme Court held that the judge had no right arbitrarily to direct a regular juror to step out of the box. That is not this case.

The truck was going at a rate of seven and a half to eight miles an hour along Collingwood avenue, an asphalt paved street; the car was going, according to the undisputed evidence in the case, from twenty-five to thirty miles an hour. It is claimed that Ward was guilty of contributory negligence in the manner in which this crossing was approached; that the horses were going at an excessive rate of speed and in violation of the ordinances of the city; it is claimed that the motorman of the car was ringing the bell so that it might have been heard if ordinary care had been exercised by Ward and the others upon the truck. One of the men on the truck, the driver who was driving the horses was not called as a witness, and a witness—Beck—was called and testified as to this driver's condition—to explain why he was not called as a witness. Beck's testimony upon that question was objected to, but was admitted and exception taken. He was permitted to state that he talked with the driver and the driver could not remember what had occurred; that he was injured about the head, and that the driver told him he could not remember. Without discussing this in detail, we are of the opinion that there was no error in admitting that. The testimony did not relate to any facts in the case, but it was proper to explain to the jury why this wit-

ness was not called and the explanation sought to be given was that, on account of his injuries, he had no recollection of the accident. Beck gave his opinion from seeing him and talking with him. That want of recollection may have been feigned by the driver, but it was a question to go to the jury. The driver might have been subpœnæd by the defendant and examined before the jury. In our judgment there was no error in admitting this testimony.

It is claimed that there was error in admitting the evidence of a custom of slacking the cars at this crossing. There was evidence offered and admitted tending to show that it was the custom in approaching this crossing for the cars to slacken their speed, and several witnesses testified to that, and the evidence showed that Ward had often crossed this crossing. He had been in the fire department for twenty-five years, and the presumption is that he had some knowledge of this custom, if it existed. Upon the question of contributory negligence and what he had a right to take into consideration at the time, we think it was proper to admit the evidence of such a custom, and it was for the jury to say whether that was a proper thing for him to consider and whether he probably knew of it.

Rules of the company were admitted over the objection and exception by defendant. A rule required the street cars to give the fire department the right of way at all crossings, and, if necessary, to stop and allow the truck or engine of the fire department to go by. We think that was properly admitted. The men on the truck had a right to take that into consideration as they approached this railroad crossing, and the violation of the rule would be evidence of negligence.

Another rule required the cars to slacken their speed at all prominent crossings. This was offered and admitted over the objection and exception and we think properly admitted.

On cross-examination, an employe of the railroad company, called by defendant, was asked by counsel for plaintiff if he had not been interviewed by counsel for plaintiff and refused to answer, stating that it was the rule to say nothing; and he was asked as to statements of his after the accident. This was objected to and exception taken. We think it was proper, on

cross-examination, to show the feeling of the witness towards the company and his feelings towards Ward as reflecting upon his credibility as a witness.

The defense offered to put in evidence the ordinances of the city prohibiting riding or driving on the streets of the city faster than six miles an hour. This was excluded by the court and that is claimed to have been error on the ground that the violation of a city ordinance is some evidence of negligence, and that it should have gone to the jury. The fire department is not subject to such an ordinance. It is the duty of the men in the fire department to get to a fire as quickly as possible after an alarm of fire is sounded; property and often human life are at stake, and an ordinance prohibiting firemen from going to a fire faster than six miles an hour would be unreasonable and would not be enforced by a court. It has been held by the Court of Appeals of New York and by the Supreme Court of Kansas that such ordinances do not apply to the fire department. The question is discussed in a case in American Negligence Cases, Vol. 1, p. 341 (152 N. Y., 222, *Farley* v. *The Mayor,* etc.) I read from the syllabus:

"Section 1932 of the consolidation act, regulating the speed of horses in the streets, has no application to fire engines on the way to fires."

And this is discussed in the opinion along the lines that I have suggested. And again in the American Negligence Cases, Vol. 1, p. 67 (60 Kan., 481, *Kansas City* v. *McDonald*), the Supreme Court of Kansas, in the first paragraph of the syllabus, say:

"An ordinance making it a misdemeanor for any person intentionally to ride or drive any horse, mule, or other beast faster than an ordinary traveling gait in any of the streets of the city is unreasonable when sought to be applied to the fire department when driving to a fire, and for that reason will not be enforced."

There was no error in the court's refusing to admit the ordinance.

The charge of the court is complained of. After an examination of the charge as a whole, we are of the opinion that there was no error in the instructions given to the jury by the court prejudicial to the defendant below; that the instructions upon

the question of concurrent negligence and subsequent negligence were fairly within the authorities. It is complained that the court used this language:

"It is purely a question of how much money will fairly compensate this wife and these children for what they have actually lost by reason of being deprived, or bereaved, if you please, of the support and maintenance which this husband would have rendered them."

Objection is made to the word "bereaved", on the ground that bereavement is not to be considered; but it is evident that the court used the word only with the meaning of "deprived" of the services, and the jury could not have been misled. There is no error in the rule for the measure of damages as given by the court, and the verdict of $3,000 is not excessive. It is said there was no evidence offered to show that Captain Ward supported his wife. That would be the presumption. He was a man fifty-two years of age and had been in the fire department twenty-five years. He was tall and weighed nearly two hundred pounds; earning $900 a year. He had a wife and three grown children who, although of age, are to be considered in some respects in the matter of damages, and we think $3,000 was not an excessive verdict.

Nor do we think that the verdict was against the weight of the evidence. The proof is that the car was going twenty-five to thirty miles an hour; this is not denied by any witness. There were three or four men in the car, employes of the railway company, and none of them denied that the car was going at that rate of speed, and none, except the motorman in charge of the car, seemed to know how fast the car was going. Whether the bell was rung or the gong sounded is a disputed question. The truck was going seven or eight miles an hour. Whether Ward was guilty of contributory negligence, and whether the company was guilty of negligence, were fair questions to submit to the jury, and with their finding we have no complaint to make. The judgment will therefore be affirmed.

*Smith & Baker,* for plaintiff in error.

*D. H. Commager, Harry S. Commager* and *Harvey Scribner,* for defendant in error.